# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 7, 2010

No. 07-60483

Lyle W. Cayce
Clerk

FRANK ADAM SEIGFRIED

Petitioner - Appellant

v.

LAWRENCE GREER

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:05-cv-00370

Before REAVLEY, DAVIS, and STEWART, Circuit Judges.

PER CURIAM:[*]

In 2002, after a jury trial, Frank Adam Seigfried was convicted of sexual battery in Mississippi state court. Seigfried now seeks a writ of habeas corpus, contending that his trial counsel rendered ineffective assistance of counsel by failing to raise a for-cause or peremptory challenge to Juror 2. The Mississippi Supreme Court and the district court denied relief. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Seigfried was indicted for sexual battery in Harrison County, Mississippi. The State alleged that Seigfried invited two minor teenage boys to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

his house and performed fellatio on one of the boys. The statutory provision under which Seigfried was prosecuted required the State to show that the sexual act was committed without the boy's consent. *See* MISS. CODE ANN. § 97-3-95(1)(a) (2000).

The case proceeded to a jury trial. During voir dire, Seigfried's trial counsel informed the potential jurors that the trial would involve an allegation of oral sex between two males. He then inquired whether anyone had "a problem with sitting on a jury examining a case like this?" Juror 2 was the first juror to respond. The following exchange took place:

> [DEFENSE]: Now, you've kind of heard some of the allegations in this case. Needless to say, this is an allegation of oral sex between two males. First, any of you have a problem—this is an allegation of a homosexual type of activity. Any of you have a problem, either through your past history, family, relative, close friend, someone that you really dislike or deplore, serving on a jury where the allegation is potential homosexual activity between a teenager and a 51-year old male? You understand the question I'm asking right now? I ask you to really think about this one. This is an allegation of homosexual activity. Any of you have a problem with sitting on a jury examining a case like this? Number 2. Let me just get my note pad. I appreciate your honesty. Anybody else? If you want to approach the bench, or do you?
>
> [JUROR 2]: I don't have any personal—I have no relatives or anything like that that would effect [sic] my ability. But I'm afraid, and I'm not sure I can articulate why, but I think that I may have a problem listening to testimony in a case like that because of strong values that might effect [sic] how I would come to a conclusion.
>
> [DEFENSE]: Correct. You know, and—
>
> [JUROR 2]: I'm not sure if that's what you're looking for.
>
> [DEFENSE]: I will go one further question, follow-up on that. Let's say consent is an issue in this case. Do you think you would have a hard time even considering whether acts of oral sex between two men could be consensual or not?
>
> STATE: Objection, your Honor. May we approach?

2

COURT: You may.

(BENCH CONFERENCE NOT REPORTED)

[DEFENSE]: Again . . . did you understand the question I was asking you?

[JUROR 2]: No, I didn't.

[DEFENSE]: Okay. A consensual homosexual act between two men, that being oral sex, do you believe you would have a hard time weighing the facts in a case like that and examine the testimony and applying the law to it?

[JUROR 2]: I honestly am not sure, but I think that I would, only because of my—again, I have strong values. I may have some preconceived opinions or ideas about what is right and wrong. So I don't know. I really don't know.

[DEFENSE]: And—

[JUROR 2]: I'm being as honest as I can.

[DEFENSE]: I understand. I think the Catholic Church contends that homosexuality—

STATE: Objection, your Honor.

COURT: Just ask questions.

[DEFENSE]: The reason that you have this is some values that you personally have yourself; is that correct?

[JUROR 2]: Yes.

[DEFENSE]: All right . . . .

Seigfried's trial counsel successfully challenged two jurors for cause, neither of whom was Juror 2. Seigfried's trial counsel also exercised all six of his peremptory challenges, but did not strike Juror 2. Juror 2 served on the jury.

Seigfried was convicted and sentenced to twenty years imprisonment. On direct appeal, the Mississippi Court of Appeals affirmed the conviction and the Mississippi Supreme Court denied the petition for certiorari. Seigfried then filed a *pro se* application for state habeas relief. Among numerous assertions of error, Seigfried claimed ineffective assistance of counsel. Addressing Seigfried's

3

ineffective assistance claim in his state habeas case, the Mississippi Supreme Court summarily held that Seigfried's ineffective assistance claim failed both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984), and denied relief. Seigfried next filed a *pro se* petition for federal habeas relief pursuant to 28 U.S.C. § 2254. The district court held that the state court's decision was objectively reasonable because its review of the record indicated that the members of the jury all indicated that they could be fair and impartial. The district court dismissed the petition with prejudice and denied a certificate of appealability (COA). Seigfried appealed to this court. We granted a COA on one issue: whether Seigfried's trial counsel rendered ineffective assistance of counsel by failing to raise a for-cause or peremptory challenge against Juror 2.

## II. DISCUSSION

We review de novo the district court's decision as to Seigfried's claim of ineffective assistance of counsel. *Carty v. Thaler*, 583 F.3d 244, 252 (5th Cir. 2009). The claim presents a mixed question of law and fact, therefore we "independently apply[ ] the law to the facts found by the district court, as long as the district court's factual determinations are not clearly erroneous." *Id*. at 253. Our review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which habeas relief may not be granted unless the state court proceeding resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2); *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1418 (2009). Evaluating an ineffective assistance of counsel claim on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether

4

that determination was unreasonable—a substantially higher threshold.'" *Knowles*, 129 S.Ct. at 1420 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Further, "doubly deferential review . . . applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard" because the *Strickland* standard is a general standard, which provides a state court with even greater latitude to reasonably determine that a defendant has not satisfied that standard. *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

A criminal defendant enjoys a Sixth Amendment right to effective assistance of counsel. *Strickland*, 466 U.S. at 685-86. Claims that counsel rendered ineffective assistance are governed by the well-known *Strickland* test, which requires that a defendant establish: (1) deficient performance by counsel and (2) prejudice. *Id.* at 687. In cases of alleged ineffective assistance grounded in the claim that counsel failed to strike a biased juror, we must also be cognizant of the fundamental nature of the right to an impartial jury. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) ("One touchstone of a fair trial is an impartial trier of fact—'a jury capable and willing to decide the case solely on the evidence before it.'" (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982))); *see also Virgil v. Dretke*, 446 F.3d 598, 607 (5th Cir. 2006).

A.    Deficient Performance

To prove deficient performance under *Strickland*, "a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under then prevailing professional norms." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (internal quotations and citations omitted). We give substantial deference to counsel's performance, applying a "strong presumption that counsel performed adequately and exercised reasonable professional judgment." *Virgil*, 446 F.3d at 608. "A fair assessment

of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

1. *Juror Bias*

In conducting the deficient performance analysis in the context of counsel's failure to strike an allegedly partial juror, a court first evaluates whether the juror at issue was actually biased. *See Virgil*, 446 F.3d at 608-10. The issue of juror bias is a factual finding. *Id.* at 610 n.52 (citing *Patton v. Yount*, 467 U.S. 1025 (1984)). Because the question of whether jurors have opinions that disqualify them is "one of historical fact," *Patton*, 467 U.S. at 1037, under AEDPA standards this court may reject the state court's implicit finding only if the habeas applicant rebuts the presumption of correctness given to the state court factual findings "by clear and convincing standards," 28 U.S.C. § 2254(e)(1)). The district court ruled that Seigfried's claim that his attorney was ineffective for failing to strike biased jurors lacked merit because "[a] review of the record indicates that the members of the jury all indicated that they could be fair and impartial." By ruling that Seigfried's claim failed both prongs of *Strickland*, the state court implicitly found that the juror was not biased.

The bias determination centers on a juror's own indication that she has "such fixed opinions that [she] could not judge impartially respondent's guilt," *Patton*, 467 U.S. at 1035, and whether "her views would prevent or substantially impair the performance of his or her duties as a juror in accordance with his or her instructions and oath," *United States v. Scott*, 159 F.3d 916, 925-26 (5th Cir. 1998).

Juror 2 stated that her "strong values . . . might effect [sic] how I would come to a conclusion." When asked whether she would "have a hard time

6

weighing the facts in a case like [this] and [examining] the testimony and applying the law to it," Juror 2 answered "I honestly am not sure, but I think that I would . . . . I really don't know." The voir dire statements by Juror 2 are ambiguous. But as the Supreme Court noted in *Patton v. Yount*, ambiguous testimony "is not unusual on voir dire examination." 467 U.S. at 1039. The Court further explained:

> It is well to remember that the lay persons on the panel may never have been subjected to the type of leading questions and cross-examination tactics that frequently are employed, and that were evident in this case. Prospective jurors represent a cross section of the community, and their education and experience vary widely. Also, unlike witnesses, prospective jurors have had no briefing by lawyers prior to taking the stand. Jurors thus cannot be expected invariably to express themselves carefully or even consistently.

*Id*. Although the statements made by Juror 2 hinted at possible bias against Seigfried, Juror 2 never explicitly stated that she could not be an impartial juror.

In contrast to the statements by Juror 2 during voir dire, both this court and others courts have found actual bias where a juror forthrightly states that she could not be fair and impartial. In *Virgil v. Dretke*, we determined that two jurors exhibited actual bias where they responded in the following manner on voir dire:

> [DEFENSE]: So therefore you could not serve as an impartial juror in this case?
>
> [VENIREMAN 16]: Perhaps not.
>
> [DEFENSE]: Is your answer no or yes?
>
> [VENIREMAN 16]: I would say no.
>
> . . . .
>
> [DEFENSE]: Would this cause you to be a juror who could not be fair and impartial in this case?
>
> [VENIREMAN 17]: Yeah, I believe so.

[DEFENSE]: All right. Not believe or is it so?

[VENIREMAN 17]: I said: Yes, I do believe so.

446 F.3d at 603-04, 610. Similarly, in *Hughes v. United States* the Sixth Circuit found a potential juror actually biased based on the following colloquy:

JUROR: I have a nephew on the police force in Wyandotte, and I know a couple of detectives, and I'm quite close to 'em.

THE COURT: Anything in that relationship that would prevent you from being fair in this case?

JUROR: I don't think I could be fair.

THE COURT: You don't think you could be fair?

JUROR: No.

258 F.3d 453, 456 (6th Cir. 2001). After reviewing the transcript of voir dire, and comparing the responses of Juror 2 to those in cases of actual bias, we cannot conclude that the state court's implicit finding that the juror was not actually biased was "an unreasonable determination of the facts." 28 U.S.C. § 2254(d)).

2. *Trial Strategy Justification*

Continuing with the deficient performance analysis, we next evaluate whether trial counsel's failure to challenge the juror was justified by trial strategy. Under *Strickland,* "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Richards*, 566 F.3d at 564 (internal quotations and citations omitted). Generally, an "attorney's actions during voir dire are considered to be a matter of trial strategy." *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995).

8

This court has held that where a juror clearly demonstrates actual bias, with no reassurance given that she would attempt impartiality, counsel may be obliged to use a for-cause or peremptory challenge on the juror, and failure to do so likely constitutes deficient performance. *Virgil*, 446 F.3d at 610; *see also Hughes*, 258 F.3d at 462 ("When a venireperson expressly admits bias on voir dire, without a court response of follow-up, for counsel not to respond in turn is simply a failure 'to exercise the customary skill and diligence that a reasonably competent attorney would provide.'") (quoting *Johnson v. Armontrout*, 961 F.2d 748, 754 (8th Cir. 1992)). Because we have concluded that Juror 2 did not demonstrate actual bias, however, trial counsel's failure to raise a for-cause challenge does not constitute error.  *See Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for . . . failure to raise a legally meritless claim.").

Observing that Seigfried's trial counsel used all six of his available peremptory strikes, the State asserts that counsel may have believed that the other potential jurors stricken via peremptory challenges would have been more likely than Juror 2 to convict Seigfried. One of the jurors stricken had prior experience working with Seigfried, one had ties to law enforcement, three knew members of the district attorney's office, and one had been assaulted at a young age. Although the record does not contain an affidavit from Seigfried's trial counsel as to his trial strategy, the record evidence of the backgrounds of the stricken jurors is consistent with the state court's implicit finding of a trial strategy justification. With respect to counsel's failure to strike Juror 2 using a peremptory challenge, we conclude that Seigfried has failed to overcome the *Strickland* presumption that leaving Juror 2 on the jury might be considered sound trial strategy. Consequently, the state court's conclusion that Seigfried's counsel's performance was not deficient is  not "objectively unreasonable."

C.    <u>Prejudice</u>

It is not enough for a petitioner to show that counsel's performance was deficient. *Strickland*, 466 U.S. at 691. The petitioner must also show that his defense was prejudiced by counsel's conduct. *Id*. at 692. But because we conclude that Seigfried's trial counsel did not render deficient performance under Strickland's first prong, there can be no resulting prejudice. *Strickland*, 466 U.S. at 697; *see also Martinez v. Dretke*, 404 F.3d 878, 885 (5th Cir. 2007) ("Under *Strickland's* conjunctive test, [petitioner's] failure to demonstrate either deficiency or prejudice must result in the failure of his claim.").

## III. CONCLUSION

For the reasons discussed, the Mississippi Supreme Court's decision that trial counsel's representation of Seigfried passed constitutional muster was not contrary to or an unreasonable application of clearly established federal law. We therefore AFFIRM the district court's judgment denying habeas relief.