# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 13-70014

————

United States Court of Appeals
Fifth Circuit

**FILED**

March 25, 2014

Lyle W. Cayce
Clerk

CHRISTOPHER CHUBASCO WILKINS,

Petitioner-Appellant

v.

WILLIAM STEPHENS, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellee

————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:12-CV-270

————

Before JOLLY, DAVIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Petitioner Christopher Chubasco Wilkins ("Wilkins") seeks a certificate of appealability ("COA") to prosecute his application for habeas corpus challenging the constitutionality of his Texas state court death sentence.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-70014

Wilkins was denied relief on direct appeal, in his initial state habeas corpus proceedings, and finally by the district court. For the reasons set out below, we now DENY Wilkins's motion for a COA and AFFIRM the district court's denial of additional funding.

I.

The facts underlying Wilkins's conviction are not in dispute. The Court of Criminal Appeals of Texas ("TCCA") set forth the facts leading to Wilkins's capital murder conviction as follows:

> [Petitioner] gave statements to authorities that described his murders of Willie Freeman and Mike Silva. Freeman was a homeless man who lived in Fort Worth. Silva lived outside Fort Worth, but traveled into the city to purchase drugs. Freeman would show Silva where to buy drugs, and Silva would share his purchases with Freeman.
>
> In October 2005, [petitioner] left a halfway house in Houston, stole a truck, and drove to Fort Worth. [Petitioner] happened upon Freeman, who offered to sell him some drugs. But Freeman and his supplier tricked [petitioner] into buying a piece of gravel instead of a rock of cocaine. The men took $20 from [petitioner] and laughed at him. So [petitioner] decided to kill Freeman.
>
> Over the next few weeks, Freeman and [petitioner] used drugs together. Freeman apologized for stealing from [petitioner] and gave him some drugs to make up for it.
>
> On October 27, 2005, [petitioner] told Freeman that he had some guns and drugs stashed on the west side of Fort Worth. Silva agreed to drive Freeman and [petitioner] in Silva's vehicle. From the back seat, [petitioner] directed Silva to an area on the west side of Fort Worth. When they arrived at a deserted stretch of road, [petitioner] shot Freeman in the back of the head. Silva stopped the vehicle and tried to escape, but he got caught in his seatbelt.

2

## No. 13-70014

[Petitioner] shot him once in the neck and twice in the head. [Petitioner] then climbed into the driver's seat and began driving with Silva's body hanging outside of the vehicle, still entangled in his seatbelt. [Petitioner] finally cut the seatbelt to remove Silva, and dumped the victims' bodies in a ditch at the side of the road.

About a week later, after two high-speed police chases, Silva's vehicle was recovered, and [petitioner] was apprehended.[1]

Wilkins was subsequently indicted for the murders of Freeman and Silva. In March 2008, a jury found Wilkins guilty of the murders and sentenced him to death. The TCCA affirmed his conviction and sentence on direct appeal.[2] The United States Supreme Court denied certiorari.[3] While his direct appeal was pending before the TCCA, Wilkins filed a state application for a writ of habeas corpus in the trial court, raising eighteen claims for relief. The trial court, in its findings of fact and conclusions of law, recommended to the TCCA that relief be denied. Based on the trial court's findings and conclusions, the TCCA denied Wilkins's application for relief.[4]

Wilkins filed his federal petition for habeas corpus in May 2012. Three weeks prior to filing his petition, Wilkins submitted an *ex parte* motion to the district court, seeking nearly $92,000 in funding to pay for a fact investigator, a mitigation specialist, a neuropsychologist, and a prison expert to help develop his claims for relief. The district court denied the motion, stating that the funding was not "reasonably necessary for the representation of petitioner in this 28 U.S.C. § 2254 proceeding."

---

[1] *Wilkins v. State*, No. 75,858 2010 WL 4117677, at *1 (Tex. Crim. App. Oct. 20, 2010).

[2] *See id.*

[3] *See Wilkins v. Texas*, 131 S. Ct. 2901 (2011).

[4] *See Ex parte Wilkins*, No. 75,229–01, 2011 WL 334213 (Tex. Crim. App. Feb. 2, 2011).

No. 13-70014

Wilkins alleged twenty-one grounds for relief in his federal habeas petition, all of which were denied by the district court. The district court denied his first eleven claims as procedurally defaulted under *Coleman v. Thompson*[5] because Wilkins failed to exhaust those claims in state court.[6] Wilkins now asks this court for a certificate of appealability as to eight of his claims for ineffective assistance of trial counsel which the district court denied as procedurally defaulted.[7]

## II.

Before a federal habeas petitioner can appeal the district court's denial of his petition, he must first obtain a certificate of appealability ("COA").[8] To obtain a COA, the petitioner must make "a substantial showing of the denial of a constitutional right."[9] "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[10] However, when the district court denies a habeas petition on procedural grounds, a COA should only issue if "the prisoner shows,

---

[5] 501 U.S. 722 (1991).

[6] The district court also found, alternatively, that Wilkins's unexhausted claims for relief numbers 1–7 and 10, all of which alleged ineffective assistance of trial counsel, would fail on the merits should the Supreme Court decide that its holding in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), which carved out an exception to the rule in *Coleman*, also applied to cases arising out of Texas courts. At the time the district court issued its order denying Wilkins's petition for relief, the Supreme Court had granted a writ of certiorari in *Trevino v. Thaler*, 133 S. Ct. 524 (2012), to address the question of whether the exception to the procedural bar created in *Martinez* applies to cases arising out of Texas state courts. Subsequently, the Supreme Court issued its opinion in *Trevino* answering that question in the affirmative. *See* 133 S. Ct. 1911 (2013).

[7] Wilkins takes no appeal of the district court's denial of his other claims for relief.

[8] *See* 28 U.S.C. § 2253(c).

[9] *See id.* § 2253(c)(2).

[10] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

No. 13-70014

at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[11]

In reviewing Wilkins's request for a COA, we conduct only a threshold inquiry into the merits of the claims he raised in his underlying habeas petition.[12] "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it."[13] In death penalty cases, "any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor."[14]

Because no COA is necessary to appeal the district court's denial of funds to a habeas petitioner, we review that portion of the district court's order for abuse of discretion.[15]

III.

Wilkins argues that the district court erred in denying habeas relief on his unexhausted claims; he asserts that he demonstrated cause and prejudice that excused his failure to exhaust and seeks a COA to challenge that determination.

Relying on *Maples v. Thomas*,[16] he argues first that his state habeas counsel Jack Strickland essentially abandoned him by failing to pursue valid claims for relief.

---

[11] *Id.* (emphasis added).

[12] *See Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003).

[13] *Id.*

[14] *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005) (alteration in original) (citation and internal quotation marks omitted).

[15] *See Smith v. Dretke*, 422 F.3d 269, 288 (5th Cir. 2005).

[16] 132 S. Ct. 912 (2012).

## No. 13-70014

He argues next that he demonstrated cause to excuse his failure to raise a number of ineffective assistance of trial counsel ("IATC") claims, pursuant to *Martinez v. Ryan*[17] and *Trevino v. Thaler*.[18]

A state prisoner's claims for habeas corpus relief may not be entertained by a federal court "when (1) 'a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'"[19] However, "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."[20] There is no dispute that the Texas Code of Criminal Procedure's bar on successive state court applications for habeas relief is an independent and adequate state ground.[21]

### A. *Maples* Claim

Wilkins first argues he has cause to excuse his procedural bar under *Maples v. Thomas* because his state habeas counsel, Jack Strickland ("Strickland"), abandoned him during state habeas proceedings.

A federal habeas petitioner is ordinarily bound by his attorney's negligence because the attorney and the client have an agency relationship under which the principal is bound by the actions of the agent.[22] However, an

---

[17] 132 S. Ct. 1309 (2012).

[18] 133 S. Ct. 1911 (2013).

[19] *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011) (first alteration in original) (quoting *Coleman*, 501 U.S. at 729–30).

[20] *Martinez*, 132 S. Ct. at 1316 (citing *Coleman*, 501 U.S. at 750).

[21] *See* Tex. Code Crim. Proc. Ann. art. 11.071 § 5(a); *see also Balentine v. Thaler*, 626 F.3d 842, 857 (5th Cir. 2010) (recognizing that Section 5 is an independent and adequate state law ground for rejecting a claim).

[22] *See Coleman*, 501 U.S. at 753 ("Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" (citation omitted)).

attorney who "abandons his client without notice . . . sever[s] the principal-agent relationship" and "no longer acts, or fails to act, as the client's representative."[23] In *Maples*, the Supreme Court held that this sort of complete attorney abandonment can constitute the kind of "extraordinary circumstances" necessary to supply cause for a procedural default.[24]

In *Maples*, the petitioner's pro bono counsel, two attorneys in a large New York law firm, left the firm months before the state procedural default occurred, and, unbeknownst to the petitioner, no other lawyer was serving as the petitioner's agent in any meaningful sense of the word.[25] Consequently, the petitioner was "left without any functioning attorney of record."[26] The petitioner failed to timely appeal the denial of his state post-conviction petition in state court because he was not notified of the denial until the time to appeal had lapsed.[27]

The instant case and *Maples* are distinguishable. Wilkins asserts he was abandoned by Strickland because Strickland worked under multiple conflicts of interest arising out of professional relationships with counsel at trial and direct appeal, as well as the court. As a result of these conflicts, Wilkins argues Strickland refused to investigate and raise any IATC claims, and failed to hire a psychologist or mitigation specialist, contrary to Wilkins's desires.[28] We have previously noted that counsel's failure to raise all issues a petitioner would like

---

[23] *Maples*, 132 S. Ct. at 922–23 (citation omitted).

[24] *Id.* at 924.

[25] *See id.* at 924–27.

[26] *Id.* at 927.

[27] *Id.* at 920.

[28] Wilkins brought this claim before the district court, which quickly rejected his argument in a footnote, stating that "*Maples* simply would not apply to this case even if petitioner's state habeas counsel had not performed properly."

to argue does not amount to abandonment.[29] Moreover, the record indicates that, unlike counsel in *Maples*, Strickland never missed a filing deadline and filed a lengthy petition which raised eighteen points of error on Wilkins's behalf. The record reflects that Strickland actively represented petitioner and, unlike counsel in *Maples*, did not abandon his client. *Maples* has no application in this case.

## B. *Martinez–Trevino* Claims

Next, Wilkins argues that Strickland's performance as state habeas counsel was ineffective because he failed to raise any IATC claims, constituting cause to excuse Wilkins's procedural default for failure to exhaust those claims under *Martinez v. Ryan* and *Trevino v. Thaler*.[30]

In *Martinez*, the Supreme Court held that a petitioner may establish cause to excuse a procedural default as to an IATC claim by showing that (1) his state habeas counsel was constitutionally deficient in failing to include an IATC claim in his first state habeas application; and (2) the underlying IATC claim is "substantial."[31] For a claim to be "substantial," a "prisoner must demonstrate that the claim has some merit."[32] Conversely, an "insubstantial" IATC claim is one that "does not have any merit" or that is "wholly without

---

[29] *See Ibarra v. Thaler*, 691 F.3d 677, 685 n.1 (5th Cir. 2012).

[30] Wilkins alleges eight IATC claims in his petition: 1) that trial counsel failed to conduct an adequate pretrial mitigation investigation; 2) that he was denied his right to unconflicted counsel; 3) that he was denied counsel at a critical stage of the proceeding; 4) that counsel was ineffective for proceeding to trial even though Wilkins desired to plead guilty; 5) that counsel was ineffective for failing to raise the issue of Wilkins's competency to stand trial; 6) that counsel failed to conduct a reasonable pretrial investigation; 7) that counsel was ineffective for failing to strike certain members of the jury venire who were biased; and 8) that counsel was ineffective for failing to object to "excessive and prejudicial" security measures imposed by the court during the sentencing phase of trial.

[31] 132 S. Ct. at 1318.

[32] *Id.*

factual support."[33] The *Martinez* Court reasoned that when inmates can only raise IATC claims under *Strickland v. Washington*[34] on state habeas review, a state habeas attorney's deficient performance may forgive a federal procedural bar.[35] Subsequently, this court held in *Ibarra v. Thaler* that *Martinez* did not apply to federal habeas cases arising from Texas convictions and that Texas inmates were "not entitled to the benefit of *Martinez* for . . . ineffectiveness claims" because Texas inmates are not limited to raising *Strickland* claims in initial collateral review proceedings.[36] In *Trevino*, the Supreme Court decided that *Martinez* does apply to cases which originated in Texas courts because "the Texas procedural system—as a matter of its structure, design, and operation—does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal."[37]

The district court issued its order denying Wilkins's petition for habeas relief before the Supreme Court handed down its decision in *Trevino*. It denied Wilkins's IATC claims as procedurally barred because, at the time, this court's opinion in *Ibarra* controlled. In that case we determined that *Martinez* did not apply to petitions challenging Texas convictions. However, the district court also acknowledged the pendency of *Trevino* in the Supreme Court, and made the alternative holding that, even if *Martinez* did apply to Wilkins's claims for ineffective assistance, such claims would nevertheless fail on their merits. The district court's reliance on *Ibarra* is therefore incorrect following *Trevino*, and its procedural ruling is, at the very least, debatable. However, to obtain a COA

---

[33] *Id.* at 1319.

[34] 466 U.S. 668 (1984).

[35] *Martinez*, 132 S. Ct. at 1320.

[36] 687 F.3d 222, 227 (5th Cir. 2012).

[37] 133 S. Ct. at 1921.

No. 13-70014

Wilkins must still demonstrate that reasonable jurists would debate "whether the petition states a valid claim of the denial of a constitutional right."[38] This in turn required Wilkins to make a substantial showing that he was denied effective assistance of trial counsel under *Strickland*.

Ineffective assistance of counsel claims are governed by the standard laid out in *Strickland*. "First, the defendant must show that counsel's performance was deficient."[39] "Second, the defendant must show that the deficient performance prejudiced the defense."[40] To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[41] To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[42] "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."[43]

Concluding that Wilkins has failed to state any substantial IATC claims, we deny a COA. We address each of his eight claims below.[44]

---

[38] *Reed v. Stephens*, 739 F.3d 753, 774 (5th Cir. 2014) (quoting *Slack v. McDaniel*, 529 U.S. 473, 478, 484 (2000) (internal quotation marks omitted)).

[39] *Strickland*, 466 U.S. at 687.

[40] *Id.*

[41] *Id.* at 688.

[42] *Id.* at 694.

[43] *Id.* at 687.

[44] Wilkins makes a ninth claim arising out of the trial court's issuance of supplementary jury instructions without notifying him or his trial counsel, or reconvening the court. He styles this claim as ineffective assistance of counsel. But it is properly framed as a claim for the denial of his right to a public trial under the Sixth Amendment. Such a claim does not fall within the scope of *Martinez* or *Trevino* and is therefore procedurally barred.

No. 13-70014

1. <u>Failure to conduct reasonable pretrial mitigation investigation</u>

Wilkins asserts his trial counsel, Wes Ball ("Ball"), was ineffective because he failed to investigate and present a constitutional sentencing case. In particular, Wilkins contends that Ball abandoned early attempts at investigation only to resume them once it was too late; that Ball failed to ensure that the jury had a "true picture of the security measures" Wilkins would be subjected to if he were sentenced to life in prison; that Ball failed to "exclude, contest or mitigate the evidence" concerning Wilkins's tattoos; and finally that Ball failed to investigate the evidence of extraneous offenses the State introduced at sentencing.

To prevail on an IATC claim, a petitioner "who alleges failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."[45] "In any [IATC claim], a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[46] Our assessment of trial counsel's investigation turns upon our "objective review of [his] performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'"[47]

The record shows that Ball first obtained the assistance of an investigator, Bruce Cummings ("Cummings"), in February 2006 and gave him "authority to investigate and seek tangible and testimonial evidence from all

---

[45] *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

[46] *Strickland*, 466 U.S. at 691.

[47] *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (quoting *Strickland*, 466 U.S. at 688–89).

witnesses having knowledge or not regarding the accusations that may be presented in [Wilkins's] case." In March 2006, Ball enlisted the help of mitigation specialist Melissa Robinson ("Robinson"). Wilkins claims that both Cummings and Robinson "soon ceased work," as demonstrated by the fact that Cummings did not submit billing for his work performed in the case. The district court noted that Robinson was replaced due to health problems. In January 2008, Ball replaced Cummings when he hired Cliff Ginn and Doug Lamberson to work as investigators. Ball also hired Dr. Kelly Goodness ("Dr. Goodness") to act as both a mitigation specialist and psychologist.

The district court found that the record showed Ginn, Lamberson, and Dr. Goodness "worked diligently at mitigation investigation," and that there was "substantial evidence that trial counsel caused timely and reasonable investigation to be conducted," including the fact that Ball called nine witnesses on Wilkins's behalf during the punishment phase of trial. The record supports this finding.

Wilkins disagrees, characterizing the investigation as abandoned too early and resumed too late. Wilkins claims he provided Ball with over eighty names of family, friends, and other persons with knowledge of his personal history, and that Ball chose to interview only a small number of them. Wilkins also contends Ball failed to locate and examine basic records of his personal history, as well as interview persons other than his mother about Wilkins's childhood. According to Wilkins, if Ball had conducted a proper investigation, a "different picture of his childhood might well have emerged." However, Dr. Goodness's investigation uncovered many of these details: she noted Wilkins's issues with drug use as a youth and reported that he felt "neglected and rejected by his family." Dr. Goodness concluded, "The lack of any sort [of]

treatment or rehabilitation efforts is remarkable." Wilkins also asserts that Ball's mitigation investigation was unreasonable because he failed to allow Dr. Goodness to perform further examinations into Wilkins's mental health issues, despite Dr. Goodness's conclusion that Wilkins had "neuropsychological deficits . . . in several areas." Wilkins further argues it was unreasonable for Ball to rely on Wilkins's "self-reported information without taking into account his impulsive and self-destructive tendencies."

In addition, Wilkins claims Ball was ineffective at the punishment phase for "fail[ing] to ensure the jury had a true picture of the security measures to which [Wilkins] would be subject if sentenced to life," for failing to "exclude, contest or mitigate the evidence concerning [Wilkins's] tattoos," and for failing to investigate the evidence the state introduced at sentencing.

The district court determined that Wilkins's claim of an unreasonable mitigation investigation amounted to "conclusory allegations" which were insufficient to show that he suffered any prejudice at the sentencing phase of his trial. We agree. Wilkins makes numerous allegations of deficient performance, but fails to show how the performance created a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[48] He claims the impact of Ball's unreasonable pretrial mitigation investigation can only be known "if the federal habeas courts provide the means to investigate and present the case that should have been developed prior to trial." Concerning the evidence of Wilkins's tattoos, he states that Ball should have filed a motion in limine,[49] and that the prejudice he suffered as a result of the evidence being introduced

---

[48] *Strickland*, 466 U.S. at 694.

[49] The record shows that Ball did object to the introduction of the evidence of Wilkins's tattoos.

"may be great." Finally, he claims that the prejudicial effects of Ball's deficient performance concerning the security measures and the evidence of extraneous offenses require "further development upon remand" with "sufficient means to develop relevant facts." None of these conclusory allegations are sufficient to merit relief under *Strickland*.[50] Wilkins fails to persuade us that reasonable jurists would find the district court's assessment of his IATC claim for inadequate pretrial mitigation investigation debatable or wrong.[51]

2. Denial of the right to unconflicted counsel

Wilkins next argues that he was denied the right to unconflicted counsel at trial because Ball had previously represented Gilbert Vallejo ("Vallejo") in probation revocation proceedings two decades earlier. Sometime before trial, Wilkins confessed to police that he had murdered Vallejo two days before killing Freeman and Silva. Wilkins contends his confession to murdering Ball's former client was false. The evidence of the confession was excluded at trial, but the state was permitted to introduce this evidence during the sentencing phase. Wilkins did not raise this issue at trial. He originally raised this issue with the TCCA prior to his direct appeal, and the TCCA remanded the case to the trial court to investigate. After holding a hearing at which both Ball and Wilkins testified, the trial court concluded that Ball had no conflict of interest despite his representation of Vallejo twenty years earlier. Nevertheless, the trial court allowed Ball to withdraw as appellate counsel and substituted another attorney.

---

[50] *See* 466 U.S. at 693–94. ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.") (citation omitted).
[51] *See Slack*, 529 U.S. at 484.

No. 13-70014

*Cuyler v. Sullivan* establishes the controlling law regarding ineffective assistance of counsel based on conflict of interest: "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."[52] Therefore, we must determine whether Wilkins offered proof that (1) trial counsel actively represented conflicting interests, and (2) that an actual conflict of interest adversely impacted his lawyer's performance.[53] "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."[54]

Although *Cuyler* involved concurrent representation, this court "has not definitively embraced the theory that there is any real and inviolate substantive difference between conflicts of interest arising in the context of successive, as opposed to concurrent, representations."[55] In the case of successive representation, a non-hypothetical conflict exists only "when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client."[56] This determination depends on a number of factors, "including . . . whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representations is

---

[52] 446 U.S. 335, 349–50 (1980).

[53] *Id.* at 348–49 (citation omitted).

[54] *Id.* at 350.

[55] *Perillo v. Johnson*, 205 F.3d 775, 798 (5th Cir. 2000).

[56] *Id.* at 781.

related; how close in time the multiple representations are related; and whether the prior representation has been unambiguously terminated."[57]

We are satisfied that the conflict here remained "purely hypothetical."[58] Ball represented Vallejo in an unrelated probation revocation proceeding twenty years prior to his representation of Wilkins. The representation of Vallejo had been unequivocally terminated; the facts and issues of the prior representation had no relation to Ball's representation of Wilkins. No evidence was produced by Wilkins to show that Ball even remembered representing Vallejo. The burden lies with Wilkins to show that "there was some plausible alternative defense strategy that could have been pursued, but was not, because of the actual conflict."[59] Wilkins has not carried this burden, and fails to demonstrate that reasonable jurists would find the district court's assessment of this claim debatable or wrong.[60]

   3. <u>Denial of the right to counsel at a critical stage of the proceeding</u>

For his third claim, Wilkins asserts that he was *de facto* without counsel during the conflict hearing regarding Ball's relationship with Gilbert Vallejo as a result of Ball's conflict of interest. According to Wilkins, this amounted to a denial of his right to counsel at a critical stage of the proceeding in violation of his Sixth Amendment right to counsel.

The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[61] "An accused's right to be represented by counsel is

---

[57] *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005) (citing *Perillo*, 205 F.3d at 798–99).

[58] *See United States v. Burns*, 526 F.3d 852, 857 (5th Cir. 2008).

[59] *Infante*, 404 F.3d at 393 (citing *Perillo*, 205 F.3d at 807).

[60] *See Slack*, 529 U.S. at 484.

[61] U.S. Const. amend. VI.

a fundamental component of our criminal justice system."[62] "The mere *presence* of counsel is insufficient; a defendant is not represented by the counsel as guaranteed under the Sixth Amendment simply because an attorney is standing next to him during a hearing."[63]

"It is well settled that [the Sixth Amendment] means that a defendant is entitled to be represented by counsel at all critical stages of a criminal proceeding against him; critical stages of a criminal proceeding are those stages of the proceeding at which the substantial rights of a defendant may be affected."[64] In determining whether the presence of counsel is required at a particular stage, we focus on whether there has been a "denial of such significance that it makes the adversary process itself unreliable."[65] This court has held that a critical stage of a criminal proceeding is a stage at which "the substantial rights of [a defendant] may be affected."[66]

Ordinarily, a defendant asserting a violation of his Sixth Amendment right to counsel is required to demonstrate that counsel's performance was deficient and that he suffered prejudice as a result.[67] However, there are exceptions in three situations that involve circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is

---

[62] *United States v. Cronic*, 466 U.S. 648, 653 (1984).

[63] *United States v. Robles*, 445 F. App'x 771, 776–77 (5th Cir. 2011) (citing *Avery v. Alabama*, 308 U.S. 444, 446 (1940)) ("[T]he denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel.")).

[64] *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991) (citations omitted).

[65] *United States v. Russell*, 205 F.3d 768, 771 (5th Cir. 2000) (citing *Cronic*, 466 U.S. at 659).

[66] *McAfee v. Thaler*, 630 F.3d 383, 391 (5th Cir. 2011) (citation and internal quotation marks omitted).

[67] *Strickland*, 466 U.S. at 685–87.

unjustified."[68] They are: (1) "the complete denial of counsel," (2) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) where "surrounding circumstances ma[k]e it . . . unlikely that any lawyer could provide effective assistance."[69]

Wilkins asserts he was completely denied counsel at the conflict hearing in violation of his Sixth Amendment rights. However, we have already determined that Ball did not have any actual conflict of interest in his representation of Wilkins. Therefore, Wilkins was not deprived of counsel during the conflict hearing.

4. Involuntary not guilty plea

Wilkins next argues Ball was ineffective for proceeding to trial despite Wilkins's desire to plead guilty. One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether he should plead guilty.[70] An attorney fulfills this obligation by informing the defendant about the relevant circumstances and likely consequences of a plea.[71] A defendant cannot make an intelligent choice about whether to accept a plea offer unless he fully understands the risks of proceeding to trial.[72]

Wilkins claims his plea of not guilty was not voluntary, and that he went to trial only at the insistence of Ball for Ball's benefit. Wilkins claims Ball wanted to proceed to trial to "rack up" his billable hours, despite the fact that the "prospect of success at the time of [Wilkins's] plea was slender." According

---

[68] *Cronic*, 466 U.S. at 658.

[69] *Id.* at 659, 661.

[70] *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965).

[71] *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995).

[72] *Id.* at 1171.

18

to Wilkins, the not guilty plea did not reflect his voluntary and intelligent choice and was made only for the financial benefit of Ball. In support of his claim, Wilkins cites to portions of his testimony during sentencing, when he stated "I've been trying to tell those people from out of the gate that, look, I'm guilty, okay so now what? Let's . . . get on over there and get this over with sooner rather than later." When asked if pleading not guilty had been his idea, he responded "No, absolutely not. . . . Well, these guys over here, they convinced me [to plead not guilty] . . . ." Wilkins continued to say he thought Ball wanted to continue to trial in order to accumulate billable hours. Wilkins claims that the "likely consequence" of Ball's conduct was the death sentence Wilkins received.

Our cases which consider claims of an involuntary not guilty plea require a petitioner to show that, by pleading guilty, he would have received a lower sentence,[73] or to show, in addition to deficient performance, a "reasonable probability that . . . the result of the proceeding would have been different."[74]

No evidence was presented that the state offered any deal or concession in return for a guilty plea. Therefore, even assuming Wilkins has made out a claim for deficient performance, he has not shown a reasonable probability the result of the proceeding would have been different. Like the defendant in *United States v. Faubion,* Wilkins fails to demonstrate how he was harmed by going to trial instead of pleading guilty.[75] Wilkins has thus failed to satisfy the second prong of *Strickland*, that he was prejudiced by Ball's insistence on

---

[73] *See United States v. Faubion*, 19 F.3d 226, 229–30 (5th Cir. 1994).

[74] *See United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005).

[75] *See* 19 F.3d at 229–30.

No. 13-70014

entering a not guilty plea. We therefore find no showing that reasonable jurists would find the district court's assessment of this claim debatable or wrong.[76]

### 5. <u>Incompetency to enter a plea or stand trial</u>

Wilkins contends that Ball was ineffective for failing to raise the issue of incompetency. Wilkins argues he was incompetent to stand trial because he "lacked both the ability to make meaningful use of counsel's advice, and a rational understanding of the gravity of the proceedings against him."

This court has observed that "[d]ue process prohibits the prosecution of a defendant who is not competent to stand trial."[77] The Supreme Court has held that "the standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'"[78] Habeas petitioners claiming incompetency need to bear this "threshold burden of proof which must be satisfied before the habeas court has a duty to investigate the constitutional challenge further."[79] To obtain habeas relief based on incompetency, Wilkins must show that the facts are "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during a criminal trial."[80] Once Wilkins has "presented enough probative evidence to

---

[76] *See Slack*, 529 U.S. at 484.

[77] *Dunn v. Johnson*, 162 F.3d 302, 305 (5th Cir. 1998).

[78] *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 403 (1960)).

[79] *Bruce v. Estelle*, 536 F.2d 1051, 1058–59 (5th Cir. 1976).

[80] *Id.* at 1043.

raise a substantial doubt as to his competency at the time of trial, he must then prove that incompetency by a preponderance of the evidence."[81]

In support of this claim, Wilkins points to a series of "bad decisions" he made, including: at least one extremely dangerous escape attempt; false confessions to offenses which never occurred; talking with law enforcement against the wishes of his lawyers; proceeding to trial despite his desire to plead guilty so he could "give his attorneys more billable hours"; and, rather than fighting for his life at the punishment stage, Wilkins told the jury "Just do whatever you do." In addition, Wilkins claims the record indicates many factors suggesting brain damage, and quotes a report submitted by Dr. Goodness, a psychologist, which stated, "Significant impulsivity and attention problems were noted with his having great difficulty focusing on whatever the task was, he had difficulty screening out ancillary noises in the jail, and his mind often wandered." Wilkins cites to jail records which he says indicate he is "paranoid and schizophrenic," although those same records indicate that this claim is unsubstantiated because it was not possible to take Wilkins's medical history because he became "too defensive to answer questions." Wilkins also makes the unsubstantiated claim that the records in his case "indicate many factors suggesting brain damage." According to Wilkins, these facts suggest mental health issues, and Ball, despite being fully aware of all the facts, was deficient for failing to raise the issue of incompetency to stand trial. Wilkins now asks this court for the opportunity to develop evidence concerning his mental status at the time of trial and Ball's deficient decisionmaking.

---

[81] *Moody v. Johnson*, 139 F.3d 477, 481 (5th Cir. 1998) (citations omitted).

No. 13-70014

The district court rejected Wilkins's assertion that Ball was ineffective when he failed to raise the issue of competency to stand trial. Based on the lack of probative evidence tending to show incompetence, we cannot say that reasonable jurists would find the district court's decision debatable or wrong.[82] Wilkins has displayed a pattern of bad decisions, as well as erratic behavior, inappropriate jocularity, and an indifferent attitude during the guilt and sentencing phases of his proceedings. But Wilkins offered no support to the district court that his actions are the result of brain damage and mental health problems or that he was unable to consult with counsel or understand the proceedings. These facts are not enough to raise a debatable issue that he was incompetent to stand trial.

6. <u>Failure to conduct reasonable pretrial investigation</u>

Wilkins asserts Ball was ineffective because he failed to conduct a reasonable pretrial investigation and preparation for the guilt phase of the trial. In support of his argument, Wilkins claims that Ball expended "little effort to investigate the merits beyond one crime scene visit, speaking to the medical examiners and inspecting the physical evidence a few days before trial began." As to the investigators hired by Ball, Wilkins claims they likewise "did little concerning the merits beyond visiting the crime scenes, made some inquiries there, served subpoenas, and tried to locate, or actually interviewed four witnesses from the State's witness list." Wilkins now seeks the time and resources to conduct an independent investigation so he can raise "legitimate issues" concerning the State's case.

---

[82] *See Slack,* 529 U.S. at 484.

No. 13-70014

Like his IATC claim for unreasonable pretrial mitigation investigation, Wilkins has failed to show any prejudice resulting from Ball's purportedly deficient performance in conducting the pretrial investigation. Thus, this claim lacks merit because Wilkins has failed to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[83] We therefore find that Wilkins has failed to demonstrate that reasonable jurists would find the district court's denial of this claim debatable or wrong.[84]

7.  Failure to strike members of the jury venire

Wilkins next argues Ball was ineffective for failing to strike two members of the jury venire who were "unable to render an impartial decision." Specifically, Wilkins argues that Ball was ineffective for accepting juror Robert Lee Evans ("Evans") because Evans had a family member who was a prosecutor, had encountered the prosecutor in Wilkins's case in social settings, and was "predisposed to sentence [Wilkins] to death because of the subject matter of his tattoos." In addition, Wilkins claims Ball was ineffective for accepting juror Brandy Medford ("Medford"), who Wilkins claims "had been exposed to unauthorized information about [Wilkins's] case, was impaired in her ability to follow the law, and who was related to a member of the court personnel."

"In conducting the deficient performance analysis in the context of counsel's failure to strike an allegedly partial juror, a court first evaluates whether the juror at issue was actually biased."[85] "The issue of juror bias is a

---

[83] *See Strickland*, 466 U.S. at 694.

[84] *See Slack*, 529 U.S. at 484.

[85] *Seigfried v. Greer*, 372 F. App'x 536, 539 (5th Cir. 2010) (per curiam) (citing *Virgil v. Dretke*, 446 F.3d 598, 608–10 (5th Cir. 2006)).

23

factual finding."[86] Determining bias focuses on a juror's own indication that she has "such fixed opinions that [she] could not judge impartially [the petitioner's] guilt,"[87] and whether "her views would prevent or substantially impair the performance of his or her duties as a juror in accordance with his or her instructions and oath."[88]

We agree with the district court that Wilkins has not provided evidence that either juror at issue was actually biased. The familial and social relationships pointed to by Wilkins are insufficient to carry his burden. Thus, Ball's failure to object to the inclusion of the two jurors does not constitute deficient performance within the meaning of *Strickland*. Wilkins has thus failed to demonstrate that reasonable jurists would find the district court's assessment of this claim debatable or wrong.[89]

8. <u>Failure to object to excessive and prejudicial security measures during the sentencing phase of trial</u>

In his last *Martinez* claim, Wilkins argues Ball was ineffective because he failed to object to excessive and prejudicial security measures adopted by the trial court during the sentencing phase of trial. Namely, Wilkins claims there was an excessive number of guards in close proximity to him while he testified at the sentencing phase, and that the use of a taser belt as a restraint with a guard holding the remote nearby and visible to the jury impaired his defense. Wilkins argues this was a prejudicial violation to which Ball should have objected, but did not.

---

[86] *Id.* (citing *Virgil*, 446 F.3d at 610 n.52).
[87] *Patton v. Yount*, 467 U.S. 1025, 1035 (1984).
[88] *United States v. Scott*, 159 F.3d 916, 925 (5th Cir. 1998) (citations omitted).
[89] *See Slack*, 529 U.S. at 484.

No. 13-70014

The Supreme Court "has stressed the 'acute need' for reliable decisionmaking when the death penalty is at issue."[90] "The appearance of the offender during the penalty phase in shackles . . . almost inevitably implies to a jury, as a matter of common sense, that court authorities consider the offender a danger to the community—often a statutory aggravator and nearly always a relevant factor in jury decisionmaking, even where the State does not specifically argue the point."[91] Thus, it "inevitably undermines" a jury's ability to weigh with accuracy all relevant considerations when it determines whether a defendant deserves death.[92] Accordingly, the Court has concluded that "courts cannot routinely place defendants in shackles or other physical restraints visible to the jury during the penalty phase of a capital proceeding."[93] However, a trial judge is permitted "in the exercise of his or her discretion, to take account of special circumstances, including security concerns, that may call for shackling."[94]

The record in the instant case makes clear that Wilkins had attempted escape multiple times: he broke both ankles after falling thirty feet from the outer wall of a prison basketball court; at one point, he was discovered to have swallowed a handcuff key; one of the key events which led to his encounter with murder victims Freeman and Silva was an escape from a Texas halfway house. The record also indicates a history and propensity for violence. We therefore conclude that any objection made by Ball likely would have been futile, as the trial court was well within its discretion to impose increased

---

[90] *Deck v. Missouri*, 544 U.S. 622, 632 (2005) (quoting *Monge v. California*, 524 U.S. 721, 732 (1998)).

[91] *Id*. at 633.

[92] *Id.*

[93] *Id.*

[94] *Id.*

security measures during the penalty phase given Wilkins's personal history, and the record does not demonstrate that the presence of the taser belt was open and obvious to the jury. Thus, his claim that Ball was ineffective for failing to object fails to satisfy the prejudice prong of *Strickland.* We see no reason to find that reasonable jurists would find the district court's denial of this claim debatable or wrong.[95]

Conclusion as to IATC claims

In summary, Wilkins has failed to establish cause for his procedural default under *Martinez.* Even assuming *arguendo* that state habeas counsel, Jack Strickland, was deficient for failing to bring the claims during state habeas proceedings, none of the underlying IATC claims are "substantial" as required by *Martinez.*[96] Because Wilkins, in each of his eight claims for relief, has failed to establish both prongs of an ineffective assistance claim under *Strickland,* we deny his petition for COA.

IV.

Finally, Wilkins argues that the district court abused its discretion in denying him funding to pay for expert and investigative assistance in developing the merits of his IATC claims, and that the district court's refusal to order that Wilkins's entire legal files be returned to him was an abuse of discretion.

Under the relevant statute, a district court "may authorize . . . [and] order the payment of fees and expenses" for "investigative, expert, or other services" upon a finding that they "are reasonably necessary for the

---

[95] *See Slack*, 529 U.S. at 484.
[96] *See* 132 S. Ct. at 1318.

representation of the defendant."[97] This court construes "reasonably necessary" to mean that a petitioner must demonstrate "a substantial need" for the requested assistance.[98] However, the denial of such funding "has been upheld 'when a petitioner has (a) failed to supplement his funding request with a viable constitutional claim that is not procedurally barred, or (b) when the sought after assistance would only support a meritless claim, or (c) when the sought after assistance would only supplement prior evidence.'"[99] Wilkins offered little to no evidence that the investigative avenues counsel proposed to take hold any significant chance for success. Our precedent is clear that a habeas petitioner is not entitled to investigative funds under these circumstances, and the district court did not abuse its discretion in so holding.

Likewise, the district court did not abuse its discretion when it failed to order that Wilkins's entire legal files be returned to him. The record demonstrates that, after both parties filed motions concerning the disclosure of the files, the district court held a hearing during which the parties agreed to "continue to negotiate terms of disclosure" of the material. Thereafter, the district court dismissed both motions as moot. No subsequent motions were filed on this issue which would have allowed the district court to take action; it was only raised later as grounds for relief in Wilkins's habeas petition. The district court denied relief. It stated that, during the hearing on the disclosure issue, Wilkins's federal habeas counsel "virtually admitted" this claim lacked substance, and that "[n]othing alleged in the petition causes the [district] court

---

[97] 18 U.S.C. § 3599(f).

[98] *Riley v. Dretke*, 362 F.3d 302, 307 (5th Cir. 2004) (quoting *Clark v. Johnson*, 202 F.3d 760, 768 (5th Cir. 2000)) (internal quotation marks omitted).

[99] *Woodward v. Epps*, 580 F.3d 318, 334 (5th Cir. 2009) (quoting *Smith v. Dretke*, 422 F.3d 269, 288 (5th Cir. 2005)).

to conclude that [Wilkins's] federal habeas counsel has not received all parts of his state court counsels' files relevant to his federal habeas petition." The district court did not abuse its discretion in failing to order disclosure of files under these circumstances.

V.

For the reasons stated above, we find that Wilkins has failed to demonstrate that reasonable jurists would find the district court's assessment of his claims under *Maples* and *Martinez* debatable or wrong. The district court's judgment denying additional funding is AFFIRMED and Wilkins's motion for a COA is DENIED.