NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0407n.06

Case No. 16-5075

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 14, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SENTORYIA YOUNG, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| BRUCE WESTBROOKS, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | O P I N I O N |

BEFORE: BOGGS, MOORE, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Sentoryia Young appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. A jury convicted Young of second-degree murder and two counts of aggravated assault following an altercation outside a Nashville hotel, and he was sentenced to life in prison without parole. After an unsuccessful direct appeal in state court, Young raised various claims in an initial state postconviction proceeding that were all denied. Young then appealed, but his postconviction appellate counsel raised only some of the rejected claims. The claims not raised were forfeited.

With his state law remedies exhausted, Young filed a 25-claim petition for a writ of habeas corpus in federal court. The district court found that all of Young's claims were either procedurally defaulted or meritless. It granted Young a certificate of appealability, however, on the question of whether Young's postconviction appellate counsel was so ineffective as to have

abandoned him. R. 79, Order at 2, PID 2991. Abandonment would constitute cause to excuse the default of eight claims raised by Young's initial postconviction counsel, but not by his appellate counsel. *See Maples v. Thomas*, 565 U.S. 266 (2012). We also granted Young's motion to expand the certificate of appealability to include the question of whether the district court erred in denying Young's request to depose his postconviction appellate counsel. *See* App. R. 11, Order at 7. For the following reasons, we conclude that neither claim merits relief, and we consequently affirm.

## I

In 2002, Sentoryia Young and several friends returned to a Nashville hotel room with two women from a strip club who agreed to have sex with them for $250. *State v. Young*, No. M2005-01873-CCA-R3-CD, 2008 WL 2026108, at *1 (Tenn. Crim. App. May 12, 2008), *app. denied* (Tenn. Dec. 8, 2008). After they paid the women, and as three of the men were leaving the hotel in a car, one of the women noticed that her money was missing. *Id.* An argument broke out over the allegedly stolen cash, and someone accused one of the passengers in the car of cocking his gun. *Id.* According to evidence adduced at trial, upon hearing this information, Young approached the car and fired multiple shots, killing the driver and injuring the two passengers. *Id.* at *1-*2.

Young was subsequently charged with one count of second-degree murder and two counts of aggravated assault for his involvement in the altercation. *Id.* at *1; *see also* R. 34-1, Indictment at 8–10, PID 278–80. The state's first attempt to convict Young ended in a mistrial after a police officer mentioned Young's prior criminal history, despite being warned by the judge not to do so. R. 34-1, Trial Ct. Minutes at 98, PID 368. At the conclusion of Young's second trial, a jury found Young guilty on all counts, and he was sentenced to life in prison without parole. R. 34-1, Judgments at 157–59, PID 427–29. Following his conviction, Young

requested a stay of his direct appeal so that he could file a petition for a writ of error coram nobis in the trial court. *Young*, 2008 WL 2026108, at \*2. Young sought this equitable relief based upon newly discovered evidence indicating that a chart used by the state at trial, but not admitted into evidence, might have been present in the jury room during deliberations. R. 30, Second Amended Habeas Pet. at 33, PID 143. The state trial court denied Young's petition and, in a consolidated appeal, the Tennessee Court of Criminal Appeals affirmed both the denial of this petition and Young's conviction and sentence. *Young*, 2008 WL 2026108, at \*1. The Tennessee Supreme Court declined review. *Id.*

Next, Young filed a pro se petition for state postconviction relief and later filed an amended petition through appointed counsel that raised approximately twenty grounds for relief, including sixteen claims of ineffective assistance of trial and appellate counsel. R. 34-27, Amended Pet. for Post-Conviction Relief at 40–44, PID 2415–19. Each ineffective-assistance claim was one sentence long. After an evidentiary hearing that included testimony from Young's trial attorneys, Young's initial postconviction counsel filed a Post-Hearing Memorandum focusing on only three of the ineffective-assistance-of-trial-counsel claims raised in the amended petition: counsel's failure to move for a mistrial with prejudice, counsel's incompetent use of peremptory strikes, and counsel's failure to impeach a witness during the error coram nobis proceeding. R. 34-27, Post-Hearing Memorandum at 48–50, PID 2423–25. Little to no evidence was presented on Young's remaining claims. The trial court denied Young's petition. R. 34-27, Memorandum Op. & Order at 58–64, PID 2433–39.

Young was then appointed new counsel, Hershell Koger, R. 34-37, Order Substituting Counsel at 67, PID 2442, who filed a timely notice of appeal on Young's behalf, R. 34-27, Notice of Appeal at 69, PID 2444. It is Koger's conduct that forms the basis of the appeal now before us. Young faults Koger for only re-raising four ineffective-assistance-of-counsel claims:

the three that initial postconviction counsel focused on in his post-hearing memo and the additional claim that trial counsel failed to move to strike the entire venire after emotionally-charged testimony from a prospective juror. R. 34-28, Post-Conviction Appellant Br. at 13–16.

In addition to alleging that Koger abandoned claims that were "clearly meritorious," Appellant Br. at 16, Young takes issues with other aspects of Koger's representation as well. For instance, Young claims that Koger never communicated with him, despite Young's repeated efforts to contact him. *See* Appellant Br. at 11. Koger's apparent silence prompted Young to contact his former trial attorney in an effort to ascertain the status of his appeal. *Id.* n.11. She, in turn, attempted to contact Koger directly—and indirectly through others—apparently to no avail. R. 71-1, Decl. of Amy D. Harwell ¶¶ 19–20, PID 2754–55.

Young also points to missed deadlines and a tardy filing as further evidence of Koger's dilatory conduct. Specifically, before filing Young's 17-page brief, Koger filed two motions for extensions, one of which reached the court two days after Young's brief was due. R. 71-3, Motions for Extension at 2, 4, PID 2760, 2762. The Tennessee Court of Criminal Appeals granted both motions. *See, e.g.,* R. 71-3, Order at 6, PID 2764. After the second deadline passed, Young filed a complaint with the court, saying he was concerned because he knew his brief was past due based on "what [Koger] told [him]." R. 71-5, Formal Complaint at 2, PID 2771. Koger filed a brief shortly thereafter, however, and the state court took no action on Young's complaint. Since this brief was filed a month and a half past the deadline, it was accompanied by a motion requesting permission to file. R. 71-3, Motion to Late-File at 7–8, PID 2764–65. The state appellate court accepted the tardy brief and proceeded to consider—and reject on the merits—each of the four issues raised therein, and the Tennessee Supreme Court denied Young leave to appeal. *Young v. State*, No. 2010-01762-CCA-R3-PC, 2011 WL 3630128 (Tenn. Crim. App. Aug. 18, 2011), *app. denied* (Tenn. Nov. 16, 2011).

Having exhausted state remedies, Young, again represented by new counsel, filed for habeas relief in federal court, raising twenty-five claims for relief. R. 30, Second Amended Pet. for a Writ of Habeas Corpus at 40–91, PID 150–201. Eight of these claims were raised during Young's initial state postconviction proceedings and denied on the merits, but not re-raised by Koger on state postconviction appeal. Conceding that these claims were procedurally defaulted, Young nevertheless argued that he was entitled to have a federal court review them because Koger had either been ineffective in failing to raise them, or had actually abandoned him altogether. In either case, Young contended, Koger's behavior established the requisite cause to excuse this default.

The district court rejected Young's arguments. First, it concluded that even if Koger had been ineffective, this would not entitle Young to relief under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), since the ineffectiveness of postconviction appellate counsel can never constitute cause to excuse a procedural default. R. 78, Memorandum Op. at 18–19, PID 2957–58. And second, the court held that Koger had not abandoned Young, so Young could not establish cause under *Maples v. Thomas*, 565 U.S. 266 (2012), either. *Id.* at 19–21, PID 2958–60. The district court issued a certificate of appealability on the latter question, and we expanded the certificate to include the claim that the district court should have granted Young's request to depose Koger. App. R. 11, Order at 4.

## II

In reviewing the denial of Young's § 2254 petition, we review the district court's legal conclusions de novo and its factual findings for clear error. *King v. Westbrooks*, 847 F.3d 788, 795 (6th Cir. 2017). A finding that a habeas petitioner's claim is barred by procedural default is reviewed de novo. *See Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013). A district court's

decision to deny a discovery request is reviewed for an abuse of discretion. *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004).

## III

We conclude that Young has failed to demonstrate that Hershell Koger, Young's postconviction appellate counsel, abandoned him, since Koger continued to act as Young's agent by filing a brief on his behalf. Instead, Young's abandonment claim is actually, in essence, one for ineffective assistance of counsel. But under binding precedent, postconviction appellate counsel's ineffective assistance cannot serve as cause to excuse a procedural default. Finally, because the record before us is sufficiently developed to support a finding that Koger did not abandon Young, we find no error in the trial court's denial of Young's request to depose Koger, as doing so would have been futile.

## A

Before reaching the merits, we first consider the narrow circumstances under which a postconviction counsel's actions may serve as cause to overcome a procedural default.

Habeas courts reviewing the constitutionality of state prisoners' convictions and sentences are guided by statutory and judicially-created doctrines that seek to promote principles of finality and comity by limiting federal court review. One of these doctrines is the doctrine of procedural default, "under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez*, 566 U.S. at 9. Generally, if a petitioner "fails to raise a claim on appeal, in violation of a state procedural rule, that claim is subject to procedural default" and will not be entertained by federal courts. *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015).

A petitioner's procedural default on a claim may be excused—and a prisoner entitled to federal-court review—if he can demonstrate (1) cause for the default and (2) actual prejudice

suffered as a result. *See Maples*, 565 U.S. at 280. Cause exists when "something *external* to the petitioner, something that cannot fairly be attributed to him, . . . impeded his efforts to comply with the State's procedural rule." *Id.* (internal quotations and alterations omitted). As a general principle, counsel is an agent that a client controls, so mere "[a]ttorney ignorance or inadvertence" is not normally considered "external" to a petitioner and thus will not excuse procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 753–54 (1991). Ineffective assistance of counsel can constitute cause to excuse a procedural default, however, in some circumstances. Typically, these circumstances arise only when a petitioner has a Sixth Amendment right to an attorney, such as at trial or on direct review. In these instances, the default caused by the deficiency in counsel's representation is imputed to the state and thus deemed external to the petitioner himself. *Id.* at 754. During postconviction proceedings, however, the general rule is that ineffective assistance of counsel cannot establish cause to excuse a procedural default because there is no constitutional right to an attorney in such proceedings. *Id.* Instead, petitioners are forced to "bear the risk" of any attorney errors that may occur during collateral review. *Id.* at 753.

In *Martinez v. Ryan*, the Supreme Court crafted a "narrow exception" to this general rule that ineffective assistance of postconviction counsel cannot qualify as cause. The *Martinez* Court concluded that "[i]nadequate assistance of counsel at *initial*-review collateral proceedings may establish cause for a prisoner's default of a claim of ineffective assistance at *trial*." *Martinez*, 566 U.S. at 9 (emphasis added). In other words, if a state requires a petitioner to raise claims of ineffective assistance of trial counsel for the first time on collateral review, and initial postconviction counsel is ineffective in failing to do so, this can constitute cause to excuse a procedural default if the unraised claims were substantial. *See id.* at 9–11. The effect of this exception, then, is to permit a federal habeas court to hear ineffective-assistance-of-trial-counsel

claims that were not raised in state court due to initial postconviction counsel's ineffectiveness. *Id.* at 17.

A year later, in *Trevino v. Thaler*, the Supreme Court extended *Martinez* to apply in situations where, although states may technically permit petitioners to bring ineffective-assistance-of-trial-counsel claims on direct review, as a practical matter, the state's procedural framework makes it "highly unlikely" that a prisoner "will have a meaningful opportunity" to do so. *Trevino*, 133 S. Ct. at 1921.

Apart from the *Martinez-Trevino* line of cases, the Supreme Court has described a second scenario where counsel's behavior during postconviction proceedings might provide the requisite cause to excuse the procedural default of a petitioner's claims. In *Maples v. Thomas*, the Court held that a petitioner had shown cause after his attorneys of record *abandoned* him without warning and caused him to miss the deadline to file a postconviction appeal. *Maples*, 565 U.S. at 289.

Maples had been convicted of murder and sentenced to death in Alabama, and had secured two attorneys from the New York law firm of Sullivan & Cromwell to represent him during state postconviction proceedings. *Id.* at 270. The attorneys filed an initial petition for relief on Maples's behalf, but they left the firm to take jobs elsewhere while the petition was pending. *Id.* at 275. Their new employment prohibited them from continuing to represent Maples and they accordingly stopped working on his case, but they never notified Maples or the court of their departure, and no other attorney assumed representation of Maples in the interim. *Id.* at 275–76.

Thus, when the trial court issued an order denying his petition, Maples was never notified, causing him to miss the 42-day window to file a postconviction appeal. *Id.* at 276–77. When Maples learned of this much later, he secured new representation, exhausted all possible

remaining state-court avenues for relief, and eventually filed a habeas petition in federal court. *Id.* at 277–78. The district court nevertheless found that Maples's claims were procedurally defaulted since he had missed the filing deadline to appeal them, and any claim of his postconviction appellate counsels' ineffectiveness could not serve as cause to lift the procedural bar under *Coleman*. *Id.* at 279. The Eleventh Circuit affirmed this holding.

The Supreme Court reversed, however. It distinguished *Coleman* by drawing a line between claims of attorney error on the one hand, governed by *Coleman*, *Martinez*, and *Trevino*, and claims of attorney abandonment on the other. *Id.* at 282. Notwithstanding the *Martinez-Trevino* exception, while a petitioner is ordinarily bound by postconviction counsel's negligence—"however egregious"—, a "markedly different situation" arises "when an attorney abandons his client without notice." *Id.* at 281–82. In the former scenario, counsel still acts as the petitioner's agent, just not effectively. In the latter case, the principal-agent relationship is severed, and "a client [cannot] be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." *Id.* at 283. Thus, when "extraordinary circumstances" exist and an attorney ceases to operate as a petitioner's agent "in any meaningful sense of that word," the petitioner has been abandoned, and the procedural bar to federal habeas review may be lifted.

According to the Court, Maples's situation was indeed "extraordinary." He "lacked the assistance of any authorized attorney" during the 42-day postconviction appeal window. *Id.* at 288–89. The conduct of Maples's attorneys went beyond negligence—they had "severed their agency relationship with Maples" when they assumed new employment, which by law "disabled them from continuing to represent Maples." *Id.* at 283–84 (citing Restatement (Second) of Agency § 112 (1957)). Moreover, after their departure, no other attorneys assumed representation of Maples: neither other lawyers at Sullivan & Cromwell, since none were

licensed to practice law in Alabama, *id.* at 286, nor associated local counsel, as he explicitly declined to "deal with substantive issues in the case," *id.* at 287. Compounding the problem, Maples had no reason "to suspect that he lacked counsel able and willing to represent him," thereby closing the door on any remaining chance to ensure that his postconviction appellate brief was timely filed. *Id.* at 288–89.

By abandoning their duty of representation, Maples's attorneys singlehandedly caused him to miss the deadline for filing his brief, which resulted in the procedural default of all his claims and ended any hope of having his death sentence overturned. The Court found that Maples had been "disarmed" by these "uncommon facts" and "extraordinary circumstances," and held that his attorneys' abandonment was cause to excuse the default, thereby permitting him to raise claims in federal court that had otherwise been forfeited when he missed the deadline to file a postconviction appeal. *Id.* at 280, 289.

**B**

With this overview in mind, we turn to Young's first claim for relief: that he, like Maples, was abandoned by his postconviction appellate counsel. Thus, according to Young, he too should have his procedural default excused. We disagree. Unlike Maples, Young was not abandoned because there was no severance of the attorney-client relationship.

According to Young, his postconviction appellate counsel "did absolutely nothing of value during his 'representation'" and this amounted to "effective abandonment." Appellant Br. at 11, 13. He highlights three problems with Koger's representation that he says evince abandonment: first, that counsel missed filing deadlines and ultimately filed a late brief with the court; second, that counsel failed to raise "the best and most obvious issues" in his appeal; and third, that counsel never communicated with him during the course of his representation. While

each of Young's allegations of counsel's failings cause us to question counsel's "effectiveness," they do not—separately or when considered together—constitute "abandonment."

Young's first two allegations—that Koger missed filing deadlines and did not raise the most meritorious issues—offer little support for abandonment. First, the fact that Koger missed multiple deadlines to file Koger's brief may indicate Koger was negligent, and thus ineffective, but does not show that he quit on Young's case. *Maples*, 565 U.S. at 281 (reaffirming the general rule that "when a petitioner's postconviction attorney misses a filing deadline [due to attorney negligence], the petitioner is bound by the oversight and cannot rely on it to establish cause"); *see also Ryder v. Sec'y Dep't of Corrs.*, 521 F. App'x 817, 820 (11th Cir. 2013). Koger's requests for extensions and his motion asking the court to consider his late brief show that he continued to act on Young's behalf—albeit in a negligent manner. *See* R. 71-3, Motions for Extension at 2, 4 PID 2760, 2762 (explaining that preparing for impending jury trials and hearings in other cases and attending to personal matters, "[i]n addition to working on [Young's brief]," prevented timely filing); R. 71-3, Motion to Late File at 7, PID 2765 (admitting he had mistakenly believed Young's brief was due later than the actual due date and citing "counsel error and oversight").

Koger's actions are distinguishable from those of the attorneys in *Maples*. There, Maples's attorneys never requested any time extensions, failed to file a notice of appeal altogether, and never filed *any* brief on his behalf—all of the evidence showed that they had ceased their representation and had abandoned his case. *Maples*, 565 U.S. at 276–77. Furthermore, while the state court in *Maples* refused to reissue its order denying Maples relief, which would have restarted the clock and permitted Maples to timely file despite his attorneys' abandonment, *Maples*, 565 U.S. at 277, here the Tennessee Court of Criminal Appeals permitted

Koger's tardy filing and proceeded to consider the merits of Young's claims, *see Young v. State*, 2011 WL 3630128.

Young's second argument is that, although the state appellate court heard *some* of his claims, it did not hear them all since Koger "abandon[ed] Mr. Young's best issues for obtaining relief." *See* Appellant Br. at 9. But this argument is a nonstarter since *claim* abandonment—while perhaps ineffective assistance—is not the same as *client* abandonment. *See, e.g., Towery v. Ryan*, 673 F.3d 933, 942 (9th Cir. 2012) (finding "no authority for the proposition that counsel's failure to raise a colorable habeas claim . . . severs the attorney-client relationship," and concluding on similar facts that petitioner's counsel was, at most, "negligent in failing to raise a colorable . . . claim"); *Wilkins v. Stephens*, 560 F. App'x 299, 304 (5th Cir. 2014) ("We have noted that counsel's failure to raise all issues a petitioner would like to argue does not amount to abandonment."). The type of abandonment contemplated by the Court in *Maples* occurs when a petitioner is "left without any functioning attorney of record." *Maples*, 565 U.S. at 288. But here Koger continued to function as Young's attorney by filing a 17-page brief and raising four claims for relief on his behalf—including the only three claims that the initial postconviction counsel viewed worthy of pressing.

Finally, Young asserts that counsel's "complete lack of communication" demonstrates abandonment. He claims to never have spoken to Koger throughout his appeal, despite repeated attempts to reach him, both by contacting him directly and by asking his trial counsel to call Koger on his behalf. *See, e.g.,* Appellant Br. at 11 & n.2. Young also lodged a complaint against Koger with the state court, claiming that "not once have I ever spoken to Mr. Koger." R. 71-5, Formal Complaint at 2, PID 2771. In that same complaint, however, Young admits that Koger "told [him]" that his brief "was due . . . in mid-February." *Id.* This seems to indicate at least one instance of communication between Koger and Young. *See* R. 71-3, Motions for

Extensions at 2, PID 2760. This apparent contradiction aside, Young's claims regarding Koger's nonresponsiveness are indeed problematic. Koger was likely negligent in failing to respond to Young's calls, perhaps grossly so. But this lack of communication, in light of all of the facts presented, does not result in "the markedly different situation" that arises when "an attorney abandons his client." *Maples*, 265 U.S. at 281.

In *Maples*, the attorneys' lack of communication—the failure to inform Maples that the state trial court had denied his petition and the failure to notify him of his 42-day window to file an appeal—supported the idea that the attorneys had "severed their agency relationship with Maples." *Id.* at 283. That severance occurred by law upon "the attorneys' departure from Sullivan & Cromwell and their commencement of employment that prevented them from representing Maples," as it created a conflict of interest that resulted in a breach of their duty of loyalty. *Id.* at 284 (citing Restatement (Second) of Agency § 112 (1957)). Moreover, no other attorney assumed representation of Maples in the interim. *Id.* at 286–88. The lack of communication was a result of the severance, not a cause; no one communicated with Maples because no one was representing him. *Id.* at 282 (concluding that Maples had been left "without any functioning attorney of record").

Here, unlike in *Maples*, there was no severance of the agency relationship. Koger never assumed different employment that created a conflict of interest "disabl[ing] him" from representing Young, *id.* at 270, or otherwise appeared to breach his duty of loyalty, for example, by putting his own or another's interests ahead of Young's. *See* Restatement (Second) of Agency, § 112, Comment b. Although Koger may not have communicated with Young, his other actions indicate that he continued working on Young's behalf. First, Koger filed a timely notice of appeal. R. 34-27, Notice of Appeal at 69, PID 2444. Second, he filed two motions seeking extensions for the time to file Young's brief, which indicated that he was aware of his

obligations to represent Young and was continuing to pursue relief on his behalf. R. 71-3, Motions for Extension at 2, 4, PID 2760, 2762. Lastly, Koger filed a brief—an action clearly in furtherance of Young's interests, R. 34-28, Postconviction Appellant Br. at 3–19, PID 2510–26.

To be clear, Koger should have communicated with Young. But that evidence alone does not convince us that Koger actually abandoned Young. *See Cadet v. State of Florida Dep't of Corr.*, 853 F.3d 1216, 1234 (11th Cir. 2017) (recognizing that abandonment "denotes renunciation or withdrawal, or a rejection or desertion of one's responsibilities, a walking away from the relationship"). Unlike the petitioner in *Maples*, Young was not "effectively deprived of legal representation." *Maples*, 565 U.S. at 290 (Alito, J., concurring). Instead, Koger's lack of communication speaks to his dilatory and *ineffective* behavior. *See, e.g., Howard v. United States*, 743 F.3d 459, 467–68 (6th Cir. 2014) (analyzing a § 2255 petitioner's claim that counsel "failed to communicate with him" under *Strickland's* ineffective assistance standard). We, like the district court, encourage Young to "submit a complaint . . . to the Tennessee Board of Professional Responsibility." R. 78, Memorandum Op. at 20, PID 2959. But "however egregious" Koger's behavior may have been in failing to communicate during the course of his representation of Young, that representation continued nonetheless. *See Maples,* 565 U.S. at 282.

The dissent disagrees. It would hold that Koger's failure to communicate was alone sufficient to establish abandonment and sever the agency relationship between Koger and Young.[1] *See* Dissent at 4. To support this assertion, it cites a sentence from *Maples* that quotes

---

[1] The dissent does not say when exactly Koger's lack of communication purportedly severed the agency relationship, leaving its theory to pose a whole host of line-drawing problems. For example, how long must an attorney's lapse in communication with a client linger before the agency relationship can be sua sponte severed? And can it be restored? What if an attorney communicates with a client only once, and only by letter, as it is likely Koger did here?

Justice Alito's concurring opinion in *Holland v. Florida*, 565 U.S. 631 (2010), suggesting that extraordinary circumstances warranting equitable tolling of AEDPA's 1-year statute of limitations *may* be established by "counsel's near-total failure to communicate with petitioner." *Maples*, 565 U.S. at 282 (quoting *Holland*, 560 U.S. at 659 (Alito, J., concurring)).

But *Maples* relies on this statement only insofar as a lack of communication *might* show that "an attorney [] is not operating as [a client's] agent in any meaningful sense of that word." *Id.* *Maples* does not establish that a failure to communicate by itself will always be sufficient to establish abandonment. [2]

To the contrary, the facts in *Maples* and *Holland* indicate a higher bar for abandonment. In both cases, the Court credited a whole host of attorney misconduct—only one element of which was some form of deficient communication—that gave rise to a severance of the agency relationship and the ultimate finding of abandonment. *See Holland*, 560 U.S. at 652 (analyzing whether Holland's behavior was "extraordinary" when he "failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of doing so," "did not do the research necessary to find out the proper filing deadline, despite

---

[2] The dissent also contends that, because in its view Koger's lack of communication severed the agency relationship, Koger "lacked the authority" to file Young's brief. Dissent at 6. This is incorrect. Not only did the agency relationship remain intact, giving Koger authority to file, but as appointed counsel for Young, he was *required* to continue representing Young in the absence of the state court granting him permission to withdraw. *See* Tennessee Supreme Court Rule 13 § 1(e)(5). Thus, although Young sought to remove Koger, the state court chose to credit Koger's late-filed brief rather than appoint new counsel, a decision it was entitled to make. Even when a petitioner has a Sixth Amendment right to counsel—which Young did not have at this stage in the proceedings—he does not have a right to his choice of court-appointed counsel. *Daniels v. Lafler*, 510 F.3d 735, 737 (6th Cir. 2007). The dissent makes this lack-of-authority argument because otherwise it makes little sense to claim that Young had been abandoned by Koger's lack of communication, but at the same time acknowledge that Koger did later file a brief on Young's behalf, which is clearly evidence in furtherance of the agency relationship. But under the type of abandonment contemplated by *Maples*, an attorney-client relationship is only severed when a petitioner is left "without any functioning attorney of record." *Maples*, 565 U.S. at 288.

Holland's letters that went so far as to identify the applicable legal rules," "failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case," and "failed to communicate with [Holland]"); *Maples*, 565 U.S. at 290 (Alito, J., concurring) (listing "no fewer than eight unfortunate events"—only one of which involved counsels' "failure to notify petitioner"—that led to Maples being "effectively deprived of legal representation"). Here, despite Koger's lack of communication, his other actions do not suggest a severance of the agency relationship.

Quite simply, the factual scenarios presented by *Maples* and *Holland* are very different from the circumstances present here. In both cases, the attorneys' failure to file *anything* on the petitioners' behalf prevented them from seeking relief from their death sentences: Holland missed the deadline to file a petition for federal habeas relief, *Holland*, 560 U.S. at 638, and Maples missed the deadline to file a notice of appeal from the state trial court's denial of his state habeas petition, *Maples*, 565 U.S. at 271. But here Koger *did file* a brief for Young and preserved his ability to seek future relief from conviction. Furthermore, the cases Young relies on to support his abandonment theory all involve circumstances much more akin to *Maples. See Thomas v. A.G. of Fla.*, 795 F.3d 1293, 1287 (11th Cir. 2015) (remanding the case to the district court to determine whether the conduct of Thomas's lawyer amounted to abandonment in the context of equitable tolling, while noting that *Maples* presented a "distinct" question from the one before it); *Downs v. McNeil*, 520 F.3d 1311, 1321 (11th Cir. 2008) (equitable tolling); *Mackey v. Hoffman*, 682 F.3d 1247, 1248, 1252–53 (9th Cir. 2012) (finding that, on facts similar to *Maples*, a petitioner could pursue an abandonment theory to obtain relief under Rule 60(b)(6), but remanding to the district court to make a finding to this effect).

The *Maples* Court was careful to cabin its abandonment finding to the "extraordinary circumstances" and "uncommon facts" presented by that case. *Maples*, 565 U.S. at 280, 289.

Here, the fact that Koger filed a timely notice of appeal and raised four colorable claims of relief that were considered on the merits by the Tennessee Court of Criminal Appeals sufficiently distinguishes this case from the "veritable perfect storm of misfortune," *id.* at 291 (Alito, J., concurring), that befell the petitioner in *Maples.* While we do not condone counsel's behavior, we are also not at liberty to provide relief when the law simply does not provide for it. To our knowledge, no other court of appeals has held that a lawyer abandons his client despite filing a brief on his behalf, and we will not be the first to extend *Maples* in this fashion.

At bottom, Young's argument amounts to the fact that Koger's lack of communication resulted in the abandonment of certain *claims* for relief, not that counsel abandoned him *altogether*. Two hypotheticals help illustrate this point. First, if Koger had not communicated with Young at all, but had raised all of the claims in Young's initial postconviction petition, presumably Young would have no basis for an abandonment claim. Likewise, if Koger had been a model communicator, but still chose to only raise the same four claims, Young could not have insisted that he had been abandoned. The ultimate decision about what claims to raise lies with counsel, *see Hutchinson v. Florida*, 677 F.3d 1097, 1107 (11th Cir. 2012), and the failure to raise even a colorable claim, while perhaps amounting to ineffective assistance, cannot sever the attorney-client relationship. *See Towery*, 673 F.3d at 942. Young's characterization of his ineffectiveness claim as one of abandonment, is the exact type of "word game" Justice Scalia warned against in his dissent in *Maples*. *See Maples*, 565 U.S. at 298–99 (Scalia, J., dissenting) (opining that the Court's "opinion will serve as a template for future habeas petitioners seeking to evade *Coleman's* holding that ineffectiveness of postconviction counsel will not furnish cause to excuse a procedural default," and that "[t]he trick will be to allege, not that counsel was ineffective, but rather that counsel's ineffectiveness demonstrates that he was not a genuinely

representative agent"). Because Young has not demonstrated that his postconviction appellate counsel actually abandoned him, we reject his argument.

Lastly, we note that Young cannot establish prejudice resulting from Koger's alleged abandonment. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) (holding that prejudice results when there is a "reasonable probability . . . that, but for counsel's unprofessional errors, [the] result of the proceeding would have been different"). In attempting to contact Koger, Young was solely concerned with making sure that an appellate brief was filed on his behalf. *See, e.g.,* R. 71-1, Decl. of Amy Harwell ¶ 19, PID 2754 ("Mr. Young contacted me concerned about whether an appellate brief had been filed"). But this concern appears to have been alleviated when the Tennessee Court of Criminal Appeals accepted Koger's late brief and considered it on the merits. Young never manifested any desire that Koger raise certain claims.

Additionally, the claims not raised by Koger appear to lack merit in any event. Although Young contends that Koger failed to raise the "best and most obvious issues," in his brief, this allegation is belied by the record, especially when viewing it through AEDPA's deferential lens. Instead, the record indicates that Koger may have raised the only issues for which there existed any actual evidence. While Young highlights the fact that postconviction counsel raised twenty grounds for relief, and Koger only four, this comparison is misleading. In reality, initial postconviction counsel focused on only a few claims at the evidentiary hearing. *See generally* R. 34-27, Transcript at 73–132, PID 2448–2507. The remaining ineffective-assistance-of-counsel claims were simply stated in single, conclusory sentences in the initial petition. *See, e.g.,* R.34-27, Amended Pet. for Post-Conviction Relief at 41, PID 2416 ("Petitioner's trial counsel failed to properly investigate the matter"; "Petitioner's trial counsel failed to present all available evidence on behalf of the Petitioner at trial."). This led the state court to focus on only five of Young's claims and dismiss the others summarily since there was "no evidence [presented] to

establish the legitimacy of any other allegations." R. 34-27, Op. of Initial Postconviction Ct. at 64, PID 2439. Therefore, rather than "slap[ing] together" a brief at the last minute, as Young alleges he did, it is plausible that Koger made a strategic decision and concluded that the four issues he chose to raise were the only ones for which there existed any likelihood of relief.[3]

## IV

In the alternative, Young argues that if he was not abandoned, Koger was at least ineffective in his representation and that this alone should be cause to lift the procedural bar for the eight claims he now seeks to raise. But Young was not granted a certificate of appealability on this claim, so it is not properly before us. And even if it were, it is fully foreclosed by *Coleman's* general rule that ineffective assistance of postconviction counsel cannot serve as

---

[3] Apparently the dissent would be dissatisfied with Koger's representation unless he raised each of the five claims discussed by the state court. *See* Dissent at 9. But even "[e]ffective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila v. Davis*, No. 16-6219, 2017 WL 2722418, at *10 (U.S. June 26, 2017) (emphasis added). Instead, the fact that Koger chose to raise only two of those claims, coupled with two additional issues not thoroughly addressed by the state court, sound more in strategy than abandonment. These decisions also belie the dissent's accusations that Koger "failed to research the *substantive issues* in Young's appeal"—a statement entirely devoid of supporting record evidence. *See* Dissent at 5.

Furthermore, while the dissent suggests there is evidence in the record for Young's claim that his trial counsel was ineffective in failing to request removal of a sleeping juror—a claim rejected on the merits by the state court but omitted from Koger's brief—this is simply not the case. This conclusion is buttressed by the fact that our review of the state court's rejection would be subject to AEDPA deference, allowing us to ask only whether such a decision was "based on an unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d). To seemingly create merit in the sleeping juror claim, the dissent cites an affidavit of a law clerk who claims that she "heard about one of the jurors sleeping through the whole trial." But this person admitted that she "did not actually watch the trial or listen to it." R. 71-4, Guerra Aff. ¶ 3, PID 2768. And Young's trial counsel—who was present in the courtroom—testified that she "d[idn]'t know" for how long, or during which parts of the trial, the juror was allegedly sleeping. R. 34-27, Hearing Tr. at 96, PID 2471. Presented with this vague and uncertain testimony, it is difficult to see how the state court would have reached any other outcome, let alone how we could now conclude that such an outcome was "based on an unreasonable determination of the facts."

cause. *See Coleman*, 501 U.S. at 754. Nor does it fall within *Martinez*'s exception to this rule, which permitted only *initial* postconviction counsel's ineffectiveness to serve as cause in limited circumstances. *See Martinez*, 566 U.S. at 916 (concluding that its "narrow exception" "does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings*") (emphasis added). Here, Young's initial postconviction counsel raised all of the claims whose default he now seeks to have excused, and the state trial court heard—and rejected—them on the merits. It was his postconviction *appellate* counsel's failure to re-raise certain of these claims that Young takes issue with. But, unfortunately for Young, ineffective assistance of postconviction appellate counsel simply cannot serve as cause to excuse this procedural default.

This understanding has been reaffirmed in our circuit on several occasions. *See West*, 790 F.3d at 698 (reiterating the notion that "the *Martinez-Trevino* exception does not extend to attorney error at post-conviction *appellate* proceedings because those proceedings are not the 'first occasion' at which an inmate could meaningfully raise an ineffective-assistance-of-trial-counsel claim"); *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) ("[T]he *Martinez-Trevino* exception does not apply to save procedural defaults that occur in 'appeals from initial-review collateral proceedings.'" (quoting *Martinez*, 566 U.S. at 16)).

Perhaps recognizing this argument is foreclosed by precedent, Young asks us to reconsider part of our decision in *Hodges v. Colson* "that limited *Martinez/Trevino* to ineffective assistance of trial counsel (IATC) claims alone" and instead expand that exception to include claims of ineffective assistance of *appellate* counsel. *See* Appellant Br. at 25–26 (emphasis added). But this argument was expressly rejected by the Supreme Court in *Davila v. Davis*, No. 16-6219, 2017 WL 2722418, at *4 (U.S. June 26, 2017). And more importantly, in making this argument, Young makes a crucial misstep. He conflates the *stage of the postconviction*

*proceedings* that can establish cause with the *type of claims* whose default can be excused. The Court in *Martinez* was clear that its exception only applied (1) during *initial-review* collateral proceedings and (2) to excuse default for claims of ineffective assistance of counsel at *trial*. *Martinez*, 566 U.S. at 15. It is this second aspect of *Martinez* that this court in *Hodges* and the Supreme Court in *Davila* refused to extend. *See Hodges*, 727 F.3d at 531; *Davila*, 2017 WL 2722418, at *4 (holding that the *Martinez* exception only applies to excuse postconviction counsel's ineffectiveness of "a single claim—ineffective assistance of *trial* counsel . . ." and declining to "extend that exception to allow federal courts to consider a different kind of defaulted claim—ineffective assistance of *appellate* counsel") (emphasis added).

*Davila* does not discuss the other aspect of *Martinez's* holding, which states that *initial-review* is the only *stage of the postconviction proceedings* that can furnish cause. Since Young takes issue with his postconviction *appellate* counsel's failings, not the performance of his *initial-review* counsel, the *Martinez-Trevino* exception cannot apply to excuse the default of *any* of his claims, be they claims of ineffectiveness of trial or appellate counsel. Accordingly, we reject Young's alternative argument.

## V

Lastly, Young argues that the court should, at a minimum, permit him to depose Koger to further develop his *Maples* abandonment claim. But in making this discovery request before the district court, Young couched his request as one to "substantiate the factual predicate for his claim that he has cause to overcome [the] procedural bar due to his counsel's *ineffective assistance*" under *Martinez* and *Trevino*. *See* R. 53 at 5, PID 2607 (emphasis added). Young never cited *Maples* or his theory of effective abandonment as a reason for such discovery. Therefore, the district court properly denied Young's request because his assertion that ineffective assistance of postconviction appellate counsel could serve as cause is firmly

foreclosed by Supreme Court and Sixth Circuit precedent. *See Coleman*, 501 U.S. at 742–53; *West*, 790 F.3d at 699. No amount of discovery was going to change that well-settled law. *See* R. 66, Memorandum and Order Denying Pet.'s Mot. for Discovery at 1, PID 2673 ("Discovery on a claim that is procedurally defaulted and has no chance to overcome that bar to review under current standards would obviously be futile.").

Even though Young never advanced below his need to depose Koger based on a *Maples* theory of relief, it was nevertheless not an abuse of discretion for the district court to deny him this opportunity. A habeas petitioner is "not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, a judge, "in the exercise of his discretion," may grant discovery "for good cause shown." *Id.* (quoting Habeas Corpus Rule 6(a)). Good cause exists when a petitioner sets forth "specific allegations before the court [to] show reason to believe that [he] may, if the facts are fully developed, be able to demonstrate . . . entitle[ment] to relief." *Id.* at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

Here, Young argues that deposing Koger would provide him the opportunity to "solidify his [*Maples*] claim" and get counsel to "admit" to abandoning him. *See* Appellant Br. at 10; Reply Br. at 8 n.4. However, in determining that Young was not abandoned, we accepted as true all of his claims regarding counsel's behavior. For example, we assumed that counsel did not communicate with him, that counsel missed filing deadlines and filed a tardy brief, and that counsel failed to raise claims that Young believed were the most meritorious issues on appeal. Despite these examples of subpar performance, and even if Koger were to admit to them in a deposition, there are sufficient undisputed indicia of continuing representation to compel the conclusion that Young was not abandoned. Since the "facts essential to our decision are not in doubt," allowing Young to depose postconviction appellate counsel would be both wholly unnecessary and futile. *See Maples*, 565 U.S. at 286 (finding the record sufficient to conclude

that Maples had indeed been abandoned and that a remand for fuller factual development was unnecessary).

**VI**

For the foregoing reasons, we affirm the district court's denial of Young's petition for relief.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Despite numerous efforts to contact his court-appointed counsel, Sentoryia Young was never consulted about his state postconviction appeal. After several months and three lapsed filing deadlines, Young wrote to the state court requesting new counsel, explaining that after hundreds of unreturned phone calls, Young had yet to meet, let alone speak with, his appellate counsel. When an appellate brief was hastily filed by counsel a week later, with a motion to excuse the four-month delay, Young had yet to be contacted by his counsel. Rather than appoint new counsel, the state appellate court considered and rejected the brief on the merits, but did not address the eight claims raised below that Young's counsel neglected to raise on appeal. The majority contends that Young must now bear the cost of the failures of his appellate counsel, whose actions caused the procedural default of these claims. Because I believe that Young was abandoned under the standard in *Maples v. Thomas*, 565 U.S. 266 (2012), I respectfully dissent.

Young argues that although he procedurally defaulted the claims not raised in his state appellate brief, he can nonetheless establish cause for the default because his court-appointed postconviction appellate counsel, Hershell Koger, abandoned him. Young states that Koger never communicated with him regarding his case and failed to return hundreds of direct calls made by Young. Appellant's Br. at 11. After numerous failed attempts to reach Koger, Young contacted Amy D. Harwell, who had represented Young at trial, and expressed concern about whether an appeal brief had been filed in his postconviction proceedings. R. 71–1 (Harwell Aff. at 5) (Page ID #2754). Harwell attempted to contact Koger directly multiple times, but was unable to reach him. *Id.* at 6 (Page ID #2755). She observed that "on a number of occasions Mr. Koger's voice mail was full and not accepting calls." *Id.* Paul Bruno, Young's postconviction trial counsel, also did not recall being able to contact Koger about Young's case. R. 71–2 (Bruno Aff. at 2) (Page ID #2758). Harwell ultimately contacted the trial court's chambers to inquire

whether an appeal brief had been filed in Young's postconviction case. R. 71–1 (Harwell Aff. at 6) (Page ID #2755). Specifically, Harwell spoke with Grace Guerra, one of the clerks of the trial court, who declared that upon hearing from Harwell:

> I spoke to someone at the front desk [of the appellate court] and they said that [Koger] had missed the deadline. I took it upon myself to call Koger because I did not know if *he* knew that he had missed the deadline. . . . I called him and left a voicemail. In the voicemail, I said that he could call my cell phone. I rarely give out my cell phone number to attorneys, but felt that it was important the he follow through with his duties on Mr. Young's case. . . . Koger never returned my call.

R. 71–4 (Guerra Aff. at 2) (Page ID #2769). By the time Guerra attempted to reach him, Koger had missed three filing deadlines for Young's appellant brief. On January 14, 2011, the original due date for the brief, Koger filed a motion for a thirty-day extension, which the court granted. R. 71–3 (1st Mot. for Extension at 1) (Page ID #2760). He filed a second motion for a thirty-day extension on February 16, 2011, two days after the new filing deadline, which the court again granted. R. 71–3 (2d Mot. for Extension at 1) (Page ID #2762); R. 71–3 (Order at 1) (Page ID #2764). Koger missed the third deadline, this time taking no action to request an extension.

Upon learning that Koger had missed the third deadline, Young filed a formal complaint regarding Koger. In this complaint, Young stated that "I've called Mr. Koger about 500 times since he was appointed to represent me. Not once have I ever even spoken to Mr. Koger regarding my brief." R. 71–5 (Mem. of Complaint at 1) (Page ID #2771). Young requested the court to remove and replace Koger as counsel. *Id.* One week later, on May 2, 2011, nearly two months after the third deadline had lapsed, Koger filed a motion to file appellant's brief late, citing "counsel's error and oversight." R. 71–3 (Mot. to File Late at 1) (Page ID #2765). The brief, which Koger prepared without consulting his client, failed to raise eight claims that had been raised below.

Cause for a procedural default exists where "something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Although a postconviction attorney's negligence does not constitute cause, the Supreme Court has carved out an exception in cases where an attorney's actions go beyond ineffectiveness and amount to client abandonment. *Maples*, 565 U.S. at 280–81. In articulating this difference, the Court relied upon principles of agency law, and reasoned that whereas "the principal bears the risk of negligent conduct on the part of his agent," *id.* at 281, an attorney who abandons his client severs the principal-agent relationship, and, as such, "a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word," *id.* at 282 (quoting *Holland v. Florida*, 560 U.S. 631, 659 (Alito, J., concurring in part and concurring in judgment)).

Young has clearly alleged "extraordinary circumstances beyond his control." *Id.* In *Maples*, the Supreme Court suggested that abandonment can be "evidenced by counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years." *Id.* (citations omitted). Here, Young alleges that Koger failed to speak with him even once despite hundreds of calls from Young. He also alleges that Koger failed to respond to numerous other calls from two attorneys previously assigned to the case, and never returned a phone call to the trial court's clerk, who alerted Koger that he had missed the deadline to file the appellate brief.

The majority contends that while Koger's failure to communicate amounts to ineffectiveness, that alone is insufficient to establish a claim of abandonment. To be sure, a failure effectively to communicate may amount to simple negligence in certain cases. But the majority overlooks two things. First, the failure to communicate here went far beyond the

"garden variety" negligence that typically gives rise to an ineffective assistance claim. *See Holland*, 560 U.S. at 651–52. Here, Koger's silence was remarkable both because of Young's diligence in attempting to contact his lawyer and because Koger did not just ignore his client, or even his fellow counsel, but also employees of the court. Not one party involved in this case was given any indication that Koger was representing Young's interest. The facts here indicate that the conduct amounted to far more than simple negligence. The failure to communicate here, in other words, was "extraordinary." *See id.* at 652.

Second, by the majority's own admission, Koger's failure to communicate is not the sole basis of Young's abandonment claim.[1] Koger also missed numerous filing deadlines and failed to research properly the claims that he could raise. Taken together, Koger's conduct resembles the conduct at issue in *Holland*, which the Supreme Court held went beyond a "garden variety claim of excusable neglect" and amounted to an "extraordinary" case of attorney misconduct. 560 U.S. at 651–52 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Like the lawyer in *Holland*, Koger "failed to file [Young's appellate brief] on time despite [Young's hundreds of calls in which Young] repeatedly emphasized the importance of him doing so." *Holland*, 560 U.S. at 652. Koger similarly failed to respond to Young's numerous "pleas for . . . information" about the status of his appeal. *Id.* Whereas Holland's lawyer failed to research the proper filing date, Koger appears to have done the same, and what's worse, failed to research the *substantive issues* in Young's appeal, despite the fact that these issues were identified in the proceedings below and that the attorney who originally briefed them had tried to reach out to

---

[1] The majority deals with Young's "three problems" separately, and points out that each claim, on its own, is insufficient to establish abandonment. Majority Op. at 10–13. As explained below, the problems cited by Young must be viewed together to determine if Koger's conduct amounts to abandonment rather than mere negligence. *See Holland*, 560 U.S. at 652.

Koger about the case.[2] *Id.*; R. 71–2 (Bruno Decl. at 1) (Page ID #2757). As in *Holland*, Koger did not attempt to make a proper filing on Young's behalf until Young had formally complained about Koger's inadequate representation.[3] *Holland*, 560 U.S. at 643 (noting that defendant's lawyer mailed a proposed federal habeas petition to his client the day after he responded to a complaint before the Florida Bar Association). Finally, as detailed above, Koger "failed to communicate with his client . . . despite various pleas" from Young, Young's prior attorneys, and the trial court's clerk. *Id.* at 652.

The majority contends that *Holland* is distinguishable because Koger ultimately filed a brief for Young. It is worth noting that Holland's lawyer also eventually prepared a belated filing for his client, but rather than file it directly with the court, he first asked his client to review it. *Id.* at 643. If producing work-product months after a lapsed deadline was insufficient in *Holland*, it is unclear why that is not also true here. In either case, I believe that the principal-

---

[2] Contrary to the majority's assertion, I do not argue that Koger was obligated to raise all five claims discussed by the state court. *See* Majority Op. at 19 n.3. I agree that claim abandonment alone does not amount to client abandonment. But while an attorney's decision not to raise certain claims may "sound more in strategy than abandonment," the failure to *research* those claims does not. *Id.* Coupled with further evidence of an utter failure to communicate, a failure to conduct the research necessary for adequate representation was, in *Holland*, proof of an extraordinary circumstance beyond Holland's control. Here, viewing the facts in their entirety, including not only the failure to raise these claims, but also the circumstances surrounding the filing, the record indicates that Koger, one week after Young requested his removal as counsel, attempted a last-ditch effort by filing a hastily written brief and requesting leave to file that brief despite "counsel's error and oversight." R. 71–3 (Mot. to File Late at 1) (Page ID #2765). His failure to raise claims deemed important by either the trial court, trial counsel, or Young, while itself insufficient to constitute client abandonment, is evidence of his failure to research the case.

[3] In *Holland*, defendant's lawyer drafted defendant's habeas petition three months after the statute of limitations had passed. *Holland*, 560 U.S. at 643. Here, Koger filed Young's appellate brief nearly four months after the original deadline and nearly two months after the third and final extended deadline.

agent relationship was severed before these belated attempts at representation, and that the lawyers, in both cases, lacked the authority to act on behalf of their client.

"[U]nder agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him." *Maples*, 565 U.S. at 283. In *Maples*, the Supreme Court held that the defendant had been abandoned when his two primary attorneys left their firm without notifying their client or seeking the court's permission to withdraw. *Id.* at 283–85. The Court concluded, on the basis of agency law, that their agency relationship was severed once the lawyers began new employment. *Id.* at 284–85. The Court also found that although local Alabama counsel remained as attorney of record in the case, he "did not operat[e] as [Maples's] agent in any meaningful sense of that word" because he "did not even begin to represent Maples," and upon receiving a trial court's order, he did not "contact [co-counsel] to ensure that firm lawyers were taking appropriate action." *Id.* at 287.

As in *Maples*, Young was "left without any functioning attorney of record." *Id.* at 288. Young was given no reason to believe that Koger was operating as his agent or otherwise representing his interests. Over a period of several months, Young did not hear from, and could not get in touch with, his new postconviction counsel. When permitted, Young made countless phone calls from prison and reached out to others who might be able to assist him, including former attorneys who had worked on his case. Koger did not even respond to inquiries from the trial court's clerk. Finally, in the face of apparent abandonment, Young filed a complaint seeking new counsel, in order formally to sever the principal-agent relationship.

The majority contends that there was no severance of the agency relationship in this case, because, unlike Maples's firm lawyers, Koger did not assume new employment or otherwise breach his duty of loyalty. But a breach of the duty of loyalty is not the only way an agent's authority may be terminated. Maples's local counsel, after all, never created a conflict of interest

that terminated his authority. A principal also has the power to revoke authority by "indicat[ing] that the principal no longer consents to have the agent act for him." Restatement (Second) of Agency, § 119 cmt. a. And while Young did not have a right to his choice of court-appointed counsel, "where a district court is on notice of a criminal defendant's dissatisfaction with counsel, the court has an affirmative duty to inquire as to the source and nature of that dissatisfaction—regardless of whether the attorney is court-appointed or privately retained." *Benitez v. United States*, 521 F.3d 625, 634 (6th Cir. 2008). In order to remove court-appointed counsel, a defendant must show good cause, such as by demonstrating that "the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *Id.* at 632 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 n.8 (6th Cir. 1990)). Once Koger demonstrated abandonment, Young requested Koger be removed for cause, citing Koger's failure to communicate, to meet deadlines, to keep his client informed of key developments, and to honor his client's reasonable requests. The notice Young provided was supported by good cause, and was therefore sufficient to sever the agency relationship.

The equitable principles underlying the cause exception to procedural default weigh against holding liable a petitioner who has done everything in his power to advocate on his own behalf when abandoned by his counsel. *See Maples*, 565 U.S. at 283; *Holland*, 560 U.S. at 645, 653 (holding that equitable tolling may apply where petitioner wrote numerous letters to his attorney that went unanswered, and "also repeatedly contacted the state courts, their clerks, and the . . . State Bar Association in an effort to have [his attorney]—the central impediment to the pursuit of his legal remedy—removed from his case."). I believe that Young has established abandonment and thus has cause for procedurally defaulting on the eight claims raised at his initial postconviction hearing.

The majority also argues that Young failed to show prejudice because "Young was solely concerned with making sure that an appellate brief was filed on his behalf," which the state court ultimately allowed. Majority Op. at 18. The record does not support this assertion. Although declarations from Young's former counsel state that Young was concerned with whether a brief had been filed, nothing in the record indicates that this was Young's *only* concern. Young's complaint to the court indicated that he was concerned that "not once have I ever even spoken to Mr. Koger regarding my brief," which could indicate a concern not just with the filing, but with the content of the brief. R. 71–5 (Mem. of Complaint at 1) (Page ID #2771).

Finally, the majority asserts that the record does not support Young's argument that the defaulted claims were the "best and most obvious issues," because the initial postconviction court summarily dismissed all but five of Young's twenty claims in a single paragraph. Majority Op. at 18–19. The majority argues that if the postconviction court deemed it unnecessary to address the remaining claims in detail, Koger could have made a strategic decision to raise only those issues that were likely to succeed. *Id.* at 18–19. Even accepting this flawed logic, the majority's conclusion does not follow. Of the five issues the initial postconvinction court decided to brief in detail, Koger raised only two. The majority cannot explain why the remaining three issues—juror misconduct, a sleeping juror, and failure to move for mistrial with prejudice—were so lacking in merit to justify Koger's omission, or, conversely, why two issues not thoroughly briefed by the lower court were more worthy of attention on appeal. Moreover, there is evidence to support that these omitted claims were meritorious. For example, although the state court held that Young failed to establish that a sleeping juror "failed to follow some important or essential part of the proceeding," R. 34–27 (Initial State Postconviction Order at 4) (Page ID #2437), the trial court's clerk stated in her declaration that "[e]veryone in Judge Fishburn's court, including myself, heard about one of the jurors sleeping *throughout the whole*

*trial*," R. 71–4 (Guerra Aff. at 1) (Page ID #2768) (emphasis added).[4] The record therefore does not support the majority's assertion that Koger's brief was the product of sound trial strategy.

Young has demonstrated that he was abandoned by counsel and that he was prejudiced by "extraordinary circumstances beyond his control." *Maples*, 565 U.S. at 282 (citations omitted). Under the Supreme Court's holding in *Maples*, this abandonment constitutes proper cause for Young's default. The majority viewing this matter differently, I respectfully dissent.

---

[4] The majority notes that our review of the state court's rejection of this evidence would be subject to AEDPA deference. *See* Majority Op. at 19 n.3. That is wholly irrelevant here—we are not reviewing the state court's rejection of this evidence, we are assessing Young's claim of abandonment. Although the state court rejected Young's sleeping juror claim on the merits, there is nothing to support the majority's assertion that Koger's decision to omit that claim on appeal was the result of strategic decision-making.